A96A1365. BLAKE v. KROGER COMPANY.
(480 SE2d 199)

BIRDSONG, Presiding Judge.

John Blake sued Kroger Company for injuries allegedly received when he fell in defendant's store. The trial court granted summary judgment to the defendant. Blake contends that he slipped and fell but did not see anything on the floor which caused him to slip and fall. He states that only skid marks from his shoe were sighted on the floor where he fell and that he immediately got up. Appellant testified that he "went straight to the service desk"; he says the service desk was in the immediate area, but he does not cite where in the record such evidence may be found. He contends there was an employee in the immediate area. Defendant Kroger controverts this statement of fact and contends the alleged fall occurred in aisle 5 and there was no employee in aisle 5 at the time of the fall.

Appellant testified that after he reported the fall, he and an

employee went to the area where he had fallen, and after close exam-ination, the employee located a skid mark and got down on the floor and found a small amount of clear liquid. However, appellant's other testimony does not clearly show the employee found a small amount of clear liquid on the floor. See *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680). Appellant said he "absolutely" did not believe he could have avoided this fall if he had been looking at the floor. "I think I could have been crawling, and I wouldn't have seen it." The aisle where he was walking "appear[ed] to be clean and free of any defects." He did not see anything; "there was nothing to indicate that I was stepping in something until after I had already slipped and fell." After he fell, he looked to see what was on the floor and "I didn't see anything. . . . The only thing I could see was a black trail [skid mark] where my foot had gone in the substance." He "couldn't see any substance on that floor other than my foot print." As to whether at any time he saw a puddle on the floor, he said: "No, *I took a person back to clean it up, and we still didn't see a puddle. . . . She got on the floor.* She had a rag. And *she said something to the effect that, no wonder you couldn't see it. I don't know what it is myself. And she cleaned it up.*" He said "after we came back and *I got down [on the floor], I looked, but I still didn't know what it was.*" "When we came back and *the [girl] asked me to show her where I fell, I went back there. We still couldn't see it. . . .* And she said *oh, it's some kind of detergent or something. I don't remember what she said,* verbatim." (Emphasis supplied.)

Defendant Kroger contends its employees inspect and sweep its floors on a regular basis and are instructed to clean up any foreign substance they see on the floor. Appellant's deposition shows he did not know how long the substance had been on the floor or when the floor of that aisle had been inspected.

On appeal, appellant contends the trial court erred in holding there were no material facts to support appellant's claim that an employee was in the immediate area and had an opportunity to dis-cover and remove the foreign substance. Secondly, he contends the trial court improperly shifted to him the burden of proof concerning Kroger's superior constructive knowledge. *Held*:

1. As to the proprietor's liability and duty in these cases, see *Alterman Foods v. Ligon*, 246 Ga. 620 (272 SE2d 327). To recover for a fall due to a foreign substance on the floor, the plaintiff must show the defendant had actual or constructive knowledge of the hazard and that the plaintiff was without equal knowledge of it. *J. H. Harvey Co. v. Johnson*, 211 Ga. App. 809 (440 SE2d 548). Liability for inju-ries resulting from an invitee's fall is determined by the relative knowledge possessed by the proprietor and by the invitee of the con-dition which resulted in the injury, for the basis of the proprietor's

liability is his superior knowledge. *Shansab v. Homart Dev. Co.*, 205 Ga. App. 448, 450 (422 SE2d 305). Where there is no evidence of defendant's actual knowledge of a hazardous condition, there are two classes of cases which may be based on the defendant's constructive knowledge. See *Winn-Dixie Stores v. Hardy*, 138 Ga. App. 342, 345 (226 SE2d 142). Constructive knowledge may be inferred where there is evidence an employee was in the immediate vicinity of the dangerous condition and could have noticed and easily removed the hazard (*Thompson v. Regency Mall &c.*, 209 Ga. App. 1, 3 (432 SE2d 230)), or alternatively, by showing the defendant failed to exercise reasonable care in inspecting the premises and keeping them safe. *J. H. Harvey Co.*, supra; *Winn-Dixie Stores v. Hardy*, supra.

According to the dissent, *Daniel v. John Q. Carter Enterprises*, 218 Ga. App. 223 (460 SE2d 838) requires the defendant to negate plaintiff's claim by presenting evidence not only that it had reasonable inspection and cleaning policies, but that it actually carried out those policies on the day of plaintiff's fall.

However, contrary to the dissent's perception of *Daniel*, this is not an immutable legal requirement. In the first place, in *Daniel* the defendant conducted an inspection before Daniel fell, so an inference of constructive knowledge on such grounds was not in issue. The "rule" stated in *Daniel* is therefore dictum. More importantly, if there is no evidence that actual inspecting and cleaning would have discovered and removed the foreign substance, there can logically be no inference that the defendant had constructive knowledge of its existence.

On either ground of constructive knowledge, the plaintiff must show the defendant could have found and removed the hazard. Just as a plaintiff who seeks to show constructive knowledge by showing that employees in the vicinity *could easily have noticed and removed the hazard* (*Daniel*, supra at 224), a plaintiff who claims constructive knowledge based on failure to inspect and clean the premises must show that such actions *would have found and removed the hazard*. *Daniel* itself states that in the class of cases based on failure to conduct inspecting and cleaning procedures, it must be shown the defendant's failure to discover the hazard " '*was the result of the breach of (the defendant's) legal duty to inspect the premises. If so*, an inference would arise from that breach of (the defendant's) constructive knowledge of the presence of the (foreign substance) on its floor.' " (Emphasis supplied.) Id. at 224, quoting *Food Giant v. Cooke*, 186 Ga. App. 253, 255 (366 SE2d 781). Although the dissent perceives that *Daniel* sets down a requirement to show compliance with inspection and cleaning procedures or suffer the inference of constructive knowledge, in fact *Daniel* says that in the absence of evidence the defendant conducted an inspection " '*that would have dis-*

*covered the foreign substance,'* " the plaintiff is not required to show a length of time the substance remained on the floor. (Emphasis supplied.) *Daniel*, supra at 225, quoting *Jackson v. Wal-Mart Stores*, 206 Ga. App. 165, 169 (424 SE2d 845). The dissent's understanding of *Daniel*'s "rule" is thus incomplete. *Daniel* says the defendant's failure to show compliance with inspection and cleaning procedures permits an inference of constructive knowledge only *if* there is evidence that a reasonable inspection and cleaning *would have discovered* the hazard and defendant's failure to discover the hazard was *the result of the breach* of its duty to inspect. *Daniel*, supra at 224.

In cases cited by *Daniel* for this rule, no such inference was raised because there was evidence showing a reasonable inspection of the premises had been made. *J. H. Harvey Co. v. Johnson*, supra at 810; *Morris v. Ryan's Family Steak Houses*, 206 Ga. App. 369 (425 SE2d 362); *Jackson*, supra. And, in the originator of the quoted "rule," *Mallory v. Piggly Wiggly Southern*, 200 Ga. App. 428 (408 SE2d 443), the defendant conducted reasonable inspection. Id. at 430. The fact that this was *sufficient* in *Mallory* to negate an inference of constructive knowledge does not mean such evidence is *necessary* to avoid that inference. The statement of the rule in *Mallory* is dictum and could not have been intended to control cases where there is no evidence that inspection or cleaning would have discovered and removed the substance and there is no evidence defendant's failure to detect it was the result of its failure to comply with reasonable inspection and cleaning procedures.

In creating this "rule," *Mallory* cited *Food Giant v. Cooke*, supra. *Food Giant* actually held that the issue is whether, under the existing circumstances, defendant's failure to discover the hazard prior to plaintiff's fall was *"the result of the breach of [defendant's] legal duty to inspect the premises. If so,* an inference would arise from that breach [of duty] of [defendant's] constructive knowledge of the presence of the oil on its floor."* (Emphasis supplied.) *Food Giant*, supra at 255; see *Daniel*, supra at 224. *Food Giant* involved an amount of motor oil of such size and visibility that even the plaintiff admitted she would have seen it if she had been looking, but since there was no evidence Food Giant had complied with its inspection and cleaning procedures that day, the plaintiff was not required to show the oil had been on the floor for a period of time in which Food Giant could have discovered it. See *Daniel*, supra at 225. Facing this factual stalemate, we held Food Giant "did not negate the possibility that, *under the existing circumstances*, its failure to have discovered the presence of the oil was the result of its failure to exercise reasonable care in inspecting the premises." (Emphasis supplied.) *Food Giant*, supra at 256. We concluded the issues in that case were jury questions. It is important to note that *Food Giant* carefully did not

hold there was an inference of constructive knowledge in that defendant; we merely said that "as to the issue of [Food Giant's] constructive knowledge of the oil, the trial court did not err in denying summary judgment." Id. Thus, *Food Giant* does not stand for the idea that an inference of defendant's constructive knowledge will arise if it does not show compliance with reasonable inspection and cleaning procedures, and *Mallory's* reliance on *Food Giant* for that idea was misplaced.

It is thus indisputable that going back to the original source of the dissent's "rule" (*Mallory*), we meet not the rule but the proposition relied on in this opinion: that an inference of constructive knowledge based on failure to inspect arises *only* if there is evidence defendant's failure to discover the foreign substance was *the result* of its failure to inspect. *Daniel*, supra.

In this case there is no evidence the defendant's employees could have found and removed a supposed wet spot if they had inspected and cleaned or swept the area. Any such conclusion must be plucked from the air. There is no evidence to suggest that if Kroger's employees had inspected, cleaned and swept this floor, they would have discovered or removed anything. The wet spot was barely visible, if at all, to those who crawled on the floor looking for it. It cannot be speculated that "sweeping" would have removed the hazard. The most diligent sweeping in every nook might have smeared the substance, whatever it was. There is simply no evidence that Kroger's supposed failure to inspect and clean caused its failure to discover the alleged wet spot.

According to the dissent's view of *Daniel*, a plaintiff can take such a case as this through trial, even though the evidence shows *nobody* could have seen the wet spot without crawling on the floor and despite the fact that the idea that inspection or cleaning or sweeping would have removed it is sheer speculation. The dissent's rule never existed. To impose it in this case would create an absolute inference of constructive knowledge in the defendant of any foreign substance even if there is no evidence the defendant could have discovered it, and even where the hazard was invisible or barely visible. This would be contrary to *Daniel* and all the cases it cites.

A correct rule is that in the absence of evidence that a reasonable inspection would have discovered the foreign substance, no inference can arise that defendant's failure to discover the substance was the result of its failure to inspect. *Daniel*, supra. We know of no case or rule which requires a proprietor or its employees to crawl on the floor at regular intervals to discover and remove every otherwise hidden or invisible hazard.

Where the moving party discharges his burden to show an absence of evidence supporting the non-moving party's case, the non-

moving party cannot rest on his pleadings or unsupported assertions but "must point to specific evidence giving rise to a triable issue." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474). As no inference arises that Kroger's failure to discover the foreign substance was caused by its alleged failure to "actually perform" an inspection, no inference arises that appellant's injuries were caused by Kroger's presumed failure actually to perform its routine inspection that day. Kroger cannot be charged with *constructive* knowledge of this substance based on its failure to testify that it actually carried out its usual inspection.

2. Since Kroger has shown conclusively that it had no actual knowledge of a dangerous condition on the floor and the evidence raises no inference of constructive knowledge, appellant's case rests solely on the proposition that an employee was in the immediate vicinity of the foreign substance and should have discovered and removed it. Court of Appeals Rule 27 (a) (1) requires appellant to cite such parts of the record or transcript essential to consideration of his case, but in violation of this rule and in complete failure to support his assertion that an employee of the defendant was in the immediate vicinity of his fall, appellant cites no such evidence to this Court. There can be no inference that there was an employee in the immediate vicinity, for the evidence offered by appellant is too uncertain and at best raises only conjecture or possibility. *Moore v. Winn-Dixie Stores*, 216 Ga. App. 72 (2) (a) (454 SE2d 532). Moreover, since appellant insists the substance was invisible and he could not have seen it if he had been "crawling" on the floor, there exists no reasonable basis from which to conclude that, even if there had been an employee in the immediate vicinity, that employee should have discovered and removed this particular hazard. *Daniel*, supra at 224.

Summary judgment is appropriate when the court, viewing all the facts and reasonable inferences from those facts most favorable to the non-moving party, concludes the evidence does not create a *genuine* issue of material fact. *Lau's Corp.*, supra at 495. The dissent's position does not rest on a genuine issue of fact but on the supposition and speculation that this wet spot was invisible or barely visible to anyone crawling on the floor. In our opinion, summary judgment to the defendant was correctly granted in this case.

*Judgment affirmed. Birdsong, P. J., Andrews, Johnson, Smith and Ruffin, JJ., concur and concur specially. Beasley, C. J., concurs specially. Pope, P. J., and Blackburn, J., dissent. McMurray, P. J., dissents without opinion.*

BEASLEY, Chief Judge, concurring specially.

I agree to the extent that, under the plaintiff's theory in this case

and the particular evidence, defendant is entitled to summary judgment.

Plaintiff alleged in his complaint that he fell "due to an *invisible* chemical solution" that defendant negligently allowed to exist on the floor, and that the negligence was that the area "should have been *cleaned* and inspected on a regular basis." (Emphasis supplied.) Plaintiff did not allege that defendant had actual knowledge of the liquid, and there is no evidence that it did. The affidavit of defendant's co-manager, on the other hand, states that "[b]ased on [his] investigation, [he] discovered that there was no Kroger employee on the aisle at the time the plaintiff allegedly fell," and no Kroger employee was aware of the liquid before Blake reported his fall. Taking this together with the allegations, the theory was constructive knowledge at best.

The undisputed evidence showed, however, that the spot of liquid was clear and was so small that unless a person was on hands and knees it would not be seen. A jury could not be permitted to find a proprietor, here a grocery store, negligent for failing to conduct such an inspection of its floor to discover such a spot.

Thus the plaintiff's case does not rest on the theory of constructive knowledge as usually understood because, even if the proprietor had inspected or patrolled minutes before plaintiff fell, it would not have discovered the liquid. It is fundamental that "[w]hile the owner or occupier of land is liable to invitees for his failure to exercise ordinary care in keeping the premises safe, [OCGA § 51-3-1], '(b)efore an owner can be held liable for the slippery conditions of his floors, produced by the presence of a foreign substance thereon, it is necessary that the proof should show that he was aware of the substance or would have known of its presence had he exercised reasonable care.' [Cit.]" *Alterman Foods v. Ligon*, 246 Ga. 620, 622 (272 SE2d 327) (1980).

Plaintiff's case rests, instead, on the theory that adequate cleaning procedures would have removed the liquid even if it was not seen by the person applying the cleaning implement (broom, mop, mechanical device). As pointed out in the dissent, proper cleaning procedures will remove "small spills that might otherwise be difficult to detect." That is certainly true in a typical grocery store, where spilled liquid is not an uncommon occurrence, and it might not be seen because of its size, the bright lighting which glares, and its blending in with the color of the floor.

*Alterman Foods* and the plethora of cases which follow it are limited to the concept that negligence must be founded on some species of knowledge. We have often said that a defendant can show a lack of knowledge by compliance with reasonable inspection "and/or cleaning procedures." See, e.g., *Morris v. Ryan's Family Steak House*, 206

Ga. App. 369 (425 SE2d 362) (1992); *Mallory v. Piggly Wiggly South-ern*, 200 Ga. App. 428, 430 (408 SE2d 443) (1991); *Baggs v. Chatham County Hosp. Auth.*, 187 Ga. App. 834, 836 (3) (371 SE2d 653) (1988); *Shiver v. Singletary*, 186 Ga. App. 746, 747 (2) (368 SE2d 523) (1988).

Where reasonable inspection would not yield knowledge, as here, reasonable cleaning procedures could correct the slippery condition nevertheless. A proprietor's duty to exercise ordinary care to keep the premises safe includes the duty " 'to take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement and use of the premises.' . . . [Cit.]" *Johnson v. Autozone*, 219 Ga. App. 390, 392 (465 SE2d 463) (1995). Regular cleaning of the floors would be such a precaution and, if adequate, would remove "invisible" spills.

Assuming that this, too, constitutes a species of constructive knowledge, defendant has not established its lack of negligence by showing that it had conducted reasonable cleaning procedures that day. The only evidence in this regard is the co-manager's affidavit, which states that on the day of the incident, "Kroger had in place a policy which set forth that the floors were to be swept and inspected on a regular basis," that "[e]mployees were instructed to look for and clean up any foreign substance they observed," and "[i]f a substance was reported on the floor anywhere in the store, it was immediately cleaned up by an employee." This is insufficient. *Food Giant v. Cooke*, 186 Ga. App. 253, 255·(1) (366 SE2d 781) (1988).

Nevertheless, liability based on constructive knowledge "requires proof of the length of time the dangerous condition was allowed to exist." (Citation and punctuation omitted.) *Edwards v. Wal-Mart Stores*, 215 Ga. App. 336, 337 (449 SE2d 613) (1994). Since the record affirmatively establishes that plaintiff cannot show that the spot was on the floor long enough for reasonable cleaning proce-dures to have eliminated it, he must suffer summary judgment in defendant's favor. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

I am authorized to state that Judge Johnson, Judge Smith, and Judge Ruffin join in this special concurrence.

ANDREWS, Judge, concurring specially.

I concur with the majority that Kroger was entitled to summary judgment because there was no evidence showing that Kroger had actual or constructive knowledge of the substance on the floor. I write separately to address the manner in which summary judgment applies to Blake's claim that Kroger had constructive knowledge of the hazard in light of the Supreme Court's ruling in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

In a premises liability case, constructive knowledge of the haz-

ardous condition may be imputed to the proprietor in two ways. In the first class of case, constructive knowledge may be imputed to the proprietor when there is evidence that an employee of the proprietor was in the immediate area of the hazard and could have easily seen and removed the hazard. *Banks v. Colonial Stores*, 117 Ga. App. 581, 584-585 (161 SE2d 366) (1968). There is no evidence that an employee of Kroger was in such a position, so this case involves the second class of constructive knowledge case. The second class of case is premised on the liability which may be imposed on a proprietor for breach of the proprietor's duty to exercise reasonable care to inspect and keep the premises in a safe condition for invitees. OCGA § 51-3-1. The theory of recovery in this class of case is that the proprietor breached its duty to exercise reasonable care to inspect the premises and discover and remove any hazard such an inspection would have revealed, and that this breach was the proximate cause of the plaintiff's injury. *Banks v. Colonial Stores*, supra. Recovery under this theory requires proof of the length of time the hazard existed on the premises because, without such proof, "it would not be possible to determine whether the [proprietor] had been afforded a reasonable time within which to inspect and remove the hazard." Id. at 585; *Hughes v. Hosp. Auth. of Floyd County*, 165 Ga. App. 530, 531 (301 SE2d 695) (1983). Accordingly, "[u]nder the second method of proving constructive knowledge, if the evidence shows that a foreign substance has remained on the floor of the premises for a sufficient period of time that it should have been discovered and removed in a reasonable inspection of the premises, then an inference arises from the breach of the duty to inspect the premises and keep it safe that the proprietor has constructive knowledge of the presence of the foreign substance." *Johnson v. Autozone*, 219 Ga. App. 390, 392-393 (465 SE2d 463) (1995).

In *Daniel v. John Q. Carter Enterprises*, 218 Ga. App. 223 (460 SE2d 838) (1995), we addressed this second class of constructive knowledge case in the context of the proprietor's motion for summary judgment. We cited *Winn-Dixie of Greenville v. Ramey*, 186 Ga. App. 257 (366 SE2d 785) (1988) to state that: "In seeking summary judgment, the defendant [proprietor] has the initial burden of showing that this theory of recovery is not viable by demonstrating that it exercised reasonable care in inspecting the premises. *Ramey*, supra at 259. This burden may be carried by evidence of compliance with reasonable inspection procedures. [Cit.] . . . Once a defendant [proprietor] demonstrates a lack of actionable constructive knowledge by compliance with reasonable inspection procedures, the burden shifts back to the plaintiff to show how long the foreign substance had been allowed to remain on the floor. *Ramey*, supra at 259. . . . Of course, '(i)n the absence of evidence that (the defendant) conducted a reason-

able inspection of the premises that would have discovered the foreign substance that caused the slickness on the floor, (the plaintiff would not be) required to present evidence establishing the length of time that the substance had been allowed to remain on the floor. (Cits.)' *Jackson v. Wal-Mart Stores*, 206 Ga. App. 165, 169 (424 SE2d 845) (1992)." *Daniel*, supra at 224-225. The quoted statement from *Jackson* cited by *Daniel* also relied on *Ramey* as authority.

*Ramey*, supra, which was decided in 1988 prior to the Supreme Court's decision in *Lau's Corp.*, supra, found that, because the proprietor failed to produce any evidence that it conducted a reasonable inspection of the premises, the proprietor failed to carry its initial evidentiary burden as the movant for summary judgment to show that the plaintiff's theory of recovery was not viable. *Ramey*, supra at 258-259; see also *Food Giant v. Cooke*, 186 Ga. App. 253, 254-256 (366 SE2d 781) (1988) (decided the same day as *Ramey* and addressed the same constructive knowledge issue on summary judgment). Both *Ramey* and *Cooke* held that, since the proprietors did not meet their initial evidentiary burden on summary judgment, the burden did not shift to the plaintiff in response to summary judgment to produce evidence of how long the hazard had been on the floor. Accordingly, both *Ramey* and *Cooke* were based on the conclusion that summary judgment could not be granted to the proprietor because the "[proprietor's] evidence did not negate the possibility that, under the existing circumstances, its failure to have discovered the presence of the [hazard on the floor] was the result of its failure to exercise reasonable care in inspecting its premises. See *Winn-Dixie of Greenville v. Ramey*, supra." *Food Giant*, supra at 256.

In light of the Supreme Court's decision in *Lau's Corp.*, supra, the rule stated in *Ramey* and *Cooke* as to the proprietor's evidentiary burden on summary judgment is no longer good law. *Lau's Corp.* established the rule on summary judgment that: "A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e). . . . [A]t summary judgment a party who will not bear the burden of proof at trial need not conclusively prove the opposite of each element of the non-moving party's case. Rather, that party must demonstrate by reference to evidence in the record that there is an absence of evidence to support at least one essential element of the non-moving party's case." Id. at 491, 495 (4).

Thus, it is now clear that a defendant proprietor which moves for summary judgment on the basis that it lacked constructive knowledge of the hazard is not required, as *Ramey* and *Cooke* held prior to *Lau's Corp.*, to produce evidence that it conducted a reasonable inspection of the premises in order to shift the burden to the plaintiff to show how long the hazard had existed on the premises. Under *Lau's Corp.*, the defendant proprietor has no burden whatsoever on summary judgment to produce evidence to negate the plaintiff's theory of recovery. As this Court recently held in its whole court decision in *Johnson v. Autozone*, supra at 394, "[a]lthough showing [on a motion for summary judgment] that a foreign substance was not discovered despite compliance with reasonable inspection procedures is one method of demonstrating lack of constructive knowledge [cit.], it is not always necessary for the proprietor to show compliance with reasonable inspection procedures to establish a lack of constructive knowledge. . . . [T]he proprietor may simply point out the absence of any evidence in the record showing that the foreign substance had been on the premises for a period of time sufficient to have been discovered by a reasonable inspection of the premises. *Lau's Corp.*, supra." In the absence of such proof, there is no basis for inferring that the proprietor had constructive knowledge of the hazard, and the plaintiff's claim "tumbles like a house of cards." *Lau's Corp.*, supra at 491.

In *Daniel*, supra, the proprietor produced evidence that it adhered to a schedule of reasonable inspections, so *Daniel* did not involve application of *Ramey* and *Cooke* to a case where the proprietor did not produce evidence to negate the plaintiff's claim that it had constructive knowledge of the hazard. Nevertheless, the *Ramey* and *Cooke* rule re-stated in *Daniel* was superseded by the rule established by the Supreme Court in *Lau's Corp.*, which specifically "overrule[d] anything to the contrary." Id. at 495. *Daniel* and any other similar case of this Court decided after *Lau's Corp.* should be disapproved to the extent it states a rule which could be applied in a manner contrary to the holding of *Lau's Corp.*

The dissent erroneously cites *Daniel*, supra, for the proposition that *Lau's Corp.* required Kroger to negate Blake's claim that Kroger had constructive knowledge of the hazard by presenting evidence that it conducted a reasonable inspection of the premises. In fact, *Lau's Corp.* holds to the contrary. Under *Lau's Corp.*, Kroger had no burden to produce evidence on summary judgment to negate Blake's claim; rather it was entitled to rely on the absence of evidence in the record to support Blake's claim. Because there was no evidence as to how long the substance at issue had been on the floor, there was no basis to conclude that Kroger had constructive knowledge of the hazard, and the trial court properly granted Kroger's motion for sum-

mary judgment.

I am authorized to state that Judge Birdsong joins in this special concurrence.

BLACKBURN, Judge, dissenting.

Because Kroger did not present evidence piercing Blake's allegations of negligent inspection and cleaning, I respectfully dissent. The evidence construed in Blake's favor shows that, while walking down an aisle, he slipped on a small spot of liquid which the employee who cleaned it up surmised was detergent. The only viable issue in this case is whether Kroger exercised reasonable care in inspecting and keeping its premises safe for customers. See *Brown v. Piggly Wiggly Southern*, 210 Ga. App. 459, 460 (436 SE2d 513) (1993).

Under the analysis required by *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991), Kroger was required to negate this claim by presenting evidence that it had reasonable inspection and cleaning policies *and that it carried out those policies on the day of Blake's fall. Daniel v. John Q. Carter Enterprises*, 218 Ga. App. 223, 224-225 (460 SE2d 838) (1995). See also *Mallory v. Piggly Wiggly Southern*, 200 Ga. App. 428, 430 (1) (408 SE2d 443) (1991). Until Kroger made that showing, Blake was not required to come forward with evidence showing how long the liquid had remained on the floor, which under the *Lau's Corp.* test would constitute the showing of facts creating a triable issue. *Sheriff v. Hosp. Auth. of Houston County*, 221 Ga. App. 14, 15 (471 SE2d 3) (1996); *Daniel*, supra at 225.

The affidavit of Kroger's manager establishes the grocer had policies to inspect and sweep its aisles on a regular basis. But nowhere in that affidavit does the manager state that any employee carried out those duties on the day of Blake's fall. See *Food Giant v. Cooke*, 186 Ga. App. 253, 255 (1) (366 SE2d 781) (1988). Because Kroger has not presented evidence that it complied with its own policies, we cannot exclude the possibility that the liquid had been on the floor an unreasonable period of time. See *Edwards v. Wal-Mart Stores*, 215 Ga. App. 336, 337 (449 SE2d 613) (1994) (employee's affidavit not conclusive). Compare *J. H. Harvey Co. v. Johnson*, 211 Ga. App. 809 (440 SE2d 548) (1994) and *Daniel*, supra at 225-226, in which the defendants made the required showing. Furthermore, unlike the defendants in *Johnson v. Autozone*, 219 Ga. App. 390 (465 SE2d 463) (1995), Kroger made no evidentiary showing that the liquid had been on the floor such a brief period of time that employees engaged in reasonable inspection procedures would not have discovered it.

I cannot agree with the majority's conclusion that Kroger's failure to establish that it had in fact swept the premises as required by its policy is immaterial.

In making its determination, the majority addresses only the

inspection requirements of Kroger's procedure and ignores the requirement to sweep the aisles. The Kroger policy required "that the floors were to be *swept* and inspected on a regular basis." (Emphasis supplied.) While it may well be true that a visual inspection might not have brought the spot to Kroger's attention, there is no question that such spot existed based on the employee's comments to Blake after the fall, i.e., "no wonder you couldn't see it. I don't know what it is myself. . . . Oh, it's some kind of detergent or something. I don't remember what she said, verbatim." Blake's honest admission on his uncertainty of the exact language used by the employee goes to the weight of his testimony, not its admissibility. In any event, the evidence must be viewed in the light most favorable to Blake as the non-moving party in a summary judgment action.

Nowhere in the record does Kroger establish that it did in fact follow its *required procedure* on the date in question of *sweeping* the aisles. It is reasonable to presume that the purpose to be served by sweeping the aisles is to clean up small spills that might otherwise be difficult to detect. The policy requires *both* inspection *and* sweeping. The majority's interpretation requires *only* a visual inspection and would make sweeping a requirement only upon a visual determination of the existence of a defect.

While Kroger policy requires "regular" inspection and sweeping, nothing in the record establishes the frequency of these regular events. The reasonableness of the policy can be determined only by evaluating *both* the regularity and the frequency of the sweeping and the inspection. After all, leap year comes around on a "regular" basis every fourth year, but it is not frequent. The reasonableness of the policy itself cannot be shown in the absence of evidence of the frequency of the required events. Absent a discharge of its burden by Kroger, no burden shifts to Blake under *Lau's Corp. v. Haskins*, supra. Because Kroger did not pierce the plaintiff's pleadings on this issue, a jury question remains as to whether it breached its duty to inspect and maintain the premises in a safe condition for its customers.

On summary judgment, the fact that Kroger established a policy which required it to inspect and sweep, but has not shown it complied with that policy, should be construed most strongly against it. The violation of a privately imposed policy such as this, while not negligence itself, is "illustrative of what is considered reasonable behavior for employees." *Schofield v. Hertz Corp.*, 201 Ga. App. 830, 831 (1) (412 SE2d 853) (1991); see also *Callaway v. Pickard*, 68 Ga. App. 637, 650 (8) (23 SE2d 564) (1942). See *Alterman Foods v. Ligon*, 246 Ga. 620, 622 (272 SE2d 327) (1980) (issue of whether store exercised *reasonable care* in keeping premises safe). A breach of the duty to inspect or sweep, especially where required by its own policy, cre-

ates an inference that the customer's fall was caused by that breach. *Food Giant*, supra at 255. Unless the evidentiary record shows without issue of material fact that the defendant complied with its duty, or otherwise shows that a breach of that duty did not proximately cause the plaintiff's injury, the defendant is not entitled to summary judgment. In this case, the trial court's detailed opinion erroneously concludes that the affidavit of Kroger's manager negated an essential element of Blake's case. Therefore, summary judgment is not warranted and the trial court's decision should be reversed.

I am authorized to state that Presiding Judge Pope joins in this dissent.

ON MOTION FOR RECONSIDERATION.

BLACKBURN, Judge.

I amend my earlier dissent by adding the following review of the process by which the appellate courts of Georgia have usurped the authority of the factfinder in premises liability cases. The decisions of this Court have so twisted, limited, and misapplied certain holdings of the Supreme Court of Georgia as to create a gauntlet of premises liability analysis through which plaintiffs almost certainly cannot pass.

The substantive genesis of present premises liability opinions is generally stated to be *Alterman Foods v. Ligon*, 246 Ga. 620 (272 SE2d 327) (1980). *Alterman Foods* involved a plaintiff who wore a built-up shoe because one of her legs was shorter than the other as a result of an automobile accident some 15 years prior to her fall on the defendant's property. At the time of her fall, Ligon had noticed nothing unusual about the floor in that it was " 'slippery and highly polished as usual.' " 246 Ga. at 621. There were no marks or streaks on the floor or stains on her clothing and no one, including Ligon, detected any foreign substance on the floor, or could determine why she fell.

The trial court granted summary judgment to defendant, this Court reversed, and the Supreme Court reversed our holding, reinstating the grant of summary judgment. See also *Ligon v. Alterman Foods*, 154 Ga. App. 440 (268 SE2d 701) (1980). The Supreme Court discussed various prior premises liability decisions by the appellate courts of Georgia with assorted factual scenarios and then divided "slip and fall" cases into "foreign substance" cases (those in which a foreign substance has fallen onto defendant's floor) and "slippery floor" cases (those in which defendant's floor has been made dangerously slippery by waxing or other treatment). 246 Ga. at 622.

The Supreme Court held that *Alterman Foods* was a "slippery floor" case, not a "foreign substance" case, and based its ruling on the

fact that "[Ligon] *could not determine what it was that caused her fall*," (emphasis in original) and "[p]laintiff did not introduce any evidence of the quality of material used or the methods which defendant used in waxing and maintaining its floor." (Emphasis omitted.) 246 Ga. at 624. "She merely stated that she slipped and fell." (Emphasis omitted.) Id. The Supreme Court further held that "[t]he slip and fall cases involving foreign substances are inapplicable in an instance [such as *Alterman Foods*] where the plaintiff alleges that he fell because of the slippery [floor caused by defendant]." Id. at 623-624. Conversely, "slippery floor" cases such as *Alterman Foods* should not be applicable to "foreign substance" cases such as the subject case. Thus, the "foreign substance" analysis of *Alterman Foods* was dicta as it was inapplicable to the facts thereof and was not the basis for the Court's holding therein.

It is thus clear that the Supreme Court did not intend to establish a "bright line" analysis of all future "foreign substance" cases. Rather, the Court intended, through the hypothetical analysis of such cases to establish guidelines by which future "foreign substance" cases might be fairly decided on a case-by-case basis. Justice in each case would result from a balancing of the rights of victims to have their cases tried before a jury of their peers, with the right of defendants to minimize the cost of meritless or frivolous claims. As to the latter category, the *Alterman Foods* decision predates the enactment of OCGA § 9-15-14, the frivolous litigation statute, which now provides relief to defendants who are truly the victims of frivolous claims. Indeed, the enactment of OCGA § 9-15-14 was intended to provide a legal remedy for defendants in frivolous lawsuits.

If plaintiff's case is as weak as contended, and defendant is as innocent as contended, a jury will surely so conclude. Defendant would then be free to seek reimbursement of its litigation expenses under OCGA § 9-15-14. Of course, a jury would apply a credibility test to the testimony of all witnesses, including the store clerk who testified on behalf of his employer that he had just inspected the subject location minutes before the subject incident. The jury would be free to reject or accept such testimony. Under the summary process presently employed, a defendant may submit an affidavit from an employee, whose salary it pays and whose duty it may have been to inspect the premises, stating that, in fact, the employee had timely inspected the subject spot and found no foreign substance. What if the employee had, in fact, not performed his duties, shall he risk termination by saying so, or sign the affidavit? What if the employee had, in fact, performed the inspection, but had done so in a negligent manner? Can it not be argued that the plaintiff's fall supports the fact of a negligent inspection to the same extent as the inspector's testimony establishes that the foreign substance was not present at

the time of the inspection? What it presents is a jury question.

Under our present premises liability analysis process, this Court has determined that the fact of inspection establishes conclusively that the foreign substance was not present at the time of the fall. This conclusion allows a defendant, but not a plaintiff, to create evidence after the incident that is essentially irrefutable, regardless of its truth. Evidence so created often entitles defendant to summary judgment under the majority's holding. The object of all legal investigation is truth, and the analysis and holdings of the majority invite falsehood. Under the majority's analysis no evidence so created is subject to a credibility test by a jury. Indeed our Court has established the credibility of defendant's affidavits *as a matter of law.*

The right to determine the credibility of witnesses is exclusively within the province of the jury, and where the outcome may be controlled by such determination, the case is not properly subject to summary adjudication. Likewise, the evidence must be viewed in favor of the non-moving party, and where the respondent/plaintiff relies in part upon inferences reasonably drawn from the evidence to establish the elements of his or her claim, such inference may not be defeated by an affidavit from defendant. Such affidavit merely creates an issue of fact for jury resolution. Any such contest between a reasonable inference and direct evidence as to a controlling fact may not be resolved by summary process. Our Court has sought to separate itself from its historic position on this matter, and the opinions are legion which include the statement that "ordinarily, negligence is a question for resolution by a jury," and then proceed to hold, however, that the case therein involved is resolvable by summary process.

In premises liability cases, our Court has tended to take holdings narrowly drawn to a particular case and find that such holding controls a totally distinguishable fact situation. Premises liability cases are very fact intensive, and therefore it is exceedingly dangerous to state that what was an appropriate application of the law in one case is necessarily controlling in another similar, but distinguishable case. The selection of an inappropriate maxim from our gallery of controlling principles may bring about an unjust result.

This fact was recognized by the Supreme Court as it dealt with *Alterman Foods,* by its inclusion of a potpourri of premises liability principles therein. With the passage of time, those *Alterman Foods* principles which support summary judgment for a defendant have predominated premises liability analysis while other principles which favor a plaintiff have taken a back seat or been given lip service.

An example of the unbalanced application of premises liability principles is the overuse of adages such as: (1) "Normally a proprietor

is permitted a reasonable time to exercise care in inspecting the premises and maintaining them in a safe condition"; and (2) "[T]he proprietor is under no duty to continuously patrol the premises." *Alterman Foods*, 246 Ga. at 622. The majority fails to analyze the balance of the second principle stated above, which is "in absence of facts showing that the premises are unusually dangerous." Id. Unusually dangerous, compared to what? Other food stores? Other departments within the same store? Too often our analysis ignores the potential for constructive knowledge by the defendant when the incident occurs in a hazardous location, i.e., the produce section. Such section is replete with hazardous conditions caused by foreign substances dropped by customers and employees on restocking and water sprayed by employees on the produce and spilled on the floor. The floor, by its pattern, is generally of such a nature that it is difficult to detect spills, especially water, unless caught in a light reflection.

Given the stores' general knowledge of the heightened danger of such conditions, why are they not charged with a heightened duty of care under such conditions? Why does not the rule as stated in *Atlanta Gas Light Co. v. Gresham*, 260 Ga. 391 (394 SE2d 345) (1990), apply: The proprietor is bound to exercise ordinary care to protect the invitee from unreasonable risks of which he or she has superior knowledge. Why does the proprietor's knowledge of the fact that foreign substances continuously and routinely create dangerous conditions for their customers, not create a jury question as to their standard of care as cited in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991)? This is especially true in the subject case, where the store's own policy required regular sweeping *and* inspection of the premises. This policy creates an inference that sweeping is required because many dangerous conditions may be difficult to detect by inspection. In my view, it was the intention of the Supreme Court that such factors be weighed in determining the appropriateness of summary judgment in only clear cases, without factual dispute being removed from a jury's consideration.

In the subject case, the special concurrence selectively relies on *Lau's Corp. v. Haskins*.

*Lau's Corp.* contains the following language: "The particular standard of care to be applied and whether the owner breached that standard are usually issues to be decided by a jury. However, these issues may be decided by the court in plain and palpable cases *where reasonable minds* cannot differ as to the conclusion to be reached." (Citations and punctuation omitted; emphasis supplied.) Id. at 493. The special concurrence ignores the plain language of *Lau's Corp.* that "summary judgment is appropriate when the court, viewing all the facts *and reasonable inferences from those facts in a light most*

*favorable to the non-moving party*, concludes that the evidence does not create a triable issue as to each essential element of the case." (Emphasis supplied.) Id. at 495. The special concurrence and similar rulings by this Court routinely ignore the requirement that the evidence be viewed in the light most favorable to the non-moving party (notwithstanding the lip service given to this principle). They also ignore the fact that the non-moving party may rely upon reasonable inferences drawn from the evidence to meet his or her burden. The primary failure of this Court is in not recognizing, accepting, and addressing inferences raised by the evidence and credibility issues.

The present state of premises liability analysis is also inconsistent with our position as a comparative negligence state, and not a contributory negligence state. Our process permits negligent defendants to escape having their negligence weighed by a jury against the negligence of the plaintiff, regardless of the relative degree of negligence, and to thereby totally avoid liability even where their negligence exceeded the plaintiff's.

For the above reasons, I respectfully dissent to the majority opinion and to Judge Andrews' special concurrence. I also dissent to Judge Beasley's special concurrence as it would appear she would ignore the fact that we have notice pleading, not issue pleading, in Georgia. She also ignores the fact that the evidence of record must be considered in addition to the complaint.

I would implore the Supreme Court of Georgia or the Georgia legislature to restore to victims the right to have their cases tried by their peers and to release the stranglehold this Court has imposed upon victims' rights through judicial activism and an improper usurpation of the authority of Georgia juries.

I am authorized to state that Presiding Judge Pope joins this addendum.

DECIDED DECEMBER 5, 1996 —
RECONSIDERATION DENIED DECEMBER 20, 1996.

*Orin L. Alexis*, for appellant.
*Brannen, Searcy & Smith, Daniel C. Cohen*, for appellee.