66093, 66094, 66095. MENKE v. FIRST NATIONAL BANK OF ATLANTA AS TRUSTEE UNDER THE WILL OF FRANCES DOWNING NIX (three cases).

CARLEY, Judge.

The issues presented for review in the three instant appeals are identical and involve the construction of the following acceleration provision of a promissory note: "Notwithstanding any other provisions of this note, holder must, before the exercise of his option to declare the entire remaining balance due and payable *give maker written notice* specifying the default and giving maker fifteen (15) days in which to cure said default. Said notice must be by certified

mail addressed to the maker's last address." (Emphasis supplied.)

The question arises within the following undisputed factual context: Appellant is the maker and appellee is the holder of certain promissory notes which contain the above quoted provision. It is undisputed that the notes were in default and that appellee sent written notice to appellant which specified the default on each of the notes and which gave him fifteen days within which to cure it. The written notices were sent certified mail, return receipt requested, on January 11, 1982, to appellant's last known address. The notices were all subsequently returned to appellee by the postal service as having been "unclaimed" by appellant.

On February 15, 1982, appellee filed three separate suits, each seeking to recover the full accelerated unpaid balance on various notes, plus interest, late fees, attorney fees and costs. Service of the three complaints was made on February 17, 1982. On February 27, 1982, appellant tendered an amount to appellee which would have been sufficient to cover the unpaid monthly installments on the notes, but which was insufficient to cover the full unpaid accelerated balances thereon. When appellee refused this tender and insisted upon payment of the full accelerated balance on each note, appellant filed his answer to the three complaints, denying that the full unpaid balances were due and owing thereon.

Subsequently, both appellee and appellant moved for summary judgment in all three cases. In support of his motions and in opposition to appellee's, appellant asserted that he had never received appellee's notices of acceleration, apparently because he was out of town at all times prior to their being returned as "unclaimed" by the postal service. According to appellant, he first became aware of the contents of the written notices of acceleration by virtue of the fact that copies thereof were attached as exhibits to the complaints. Appellant further asserted that, within fifteen days after service of the complaints, he had cured the default by tendering the amounts specified in those notices as being in arrears. Appellee's position on the cross-motions for summary judgment was that it had given appellant "notice of default as required by the terms of said Note[s]" and that appellant had "failed to cure the default within the time specified." Accordingly, the decisive issue in the cross-motions for summary judgment was whether the "notice" of acceleration contemplated by the terms of the notes was satisfied, as appellant contended, only upon their actual receipt by him or, as appellee contended, simply by its act of mailing them.

After conducting a hearing on the cross-motions, the trial court granted appellee's motions and denied appellant's. Notices of appeal were filed by appellant from the trial court's order in each of the three

cases and the resulting appeals have been consolidated for disposition in this single opinion.

1. The sole issue presented for review in these cases is whether or not appellant is entitled to claim a right to cure the defaults or whether he is obligated to pay the full accelerated unpaid balance thereon. See generally *McRae v. Federal Land Bank,* 36 Ga. App. 51 (135 SE 112) (1926). Appellee contends that it is owed the full unpaid balances because appellant failed to cure the defaults by paying the installment arrearages within fifteen days from the date that it *mailed* its acceleration notices. Appellant, on the other hand, asserts a right to cure the defaults by paying the installment arrearages within fifteen days of first *receiving* written notice of acceleration in the form of the served complaints, a time when, according to appellee, the unpaid balances had already been accelerated and the only cure possible was payment of the entire accelerated amounts.

On the uncontroverted evidence before us, the questions of appellant's right to "cure" the underlying defaults and whether that right was properly exercised are questions of law, not of fact. "[T]he construction or sufficiency of a notice is for the court. [Cits.]" *Great Central Ins. Co. v. Bowery Savings Bank,* 142 Ga. App. 630, 631 (236 SE2d 772) (1977).

It is clear that appellee's option to accelerate the entire remaining unpaid balances due on the notes was predicated upon the giving of written notice to appellant and that appellee "would have to exercise the option in order for the note[s] to become due and payable. [Cits.]" *Barnwell v. Hanson,* 80 Ga. App. 738, 741 (57 SE2d 348) (1950). See also *Woodstock Rd. Inv. Prop. v. Lacy,* 149 Ga. App. 593, 594 (2) (254 SE2d 910) (1979). "Notice is defined as 'information; the result of observation, whether by senses or the mind; knowledge of the existence of a fact or state of affairs; the means of knowledge.' [Cit.]" *Hamilton v. Edwards,* 245 Ga. 810, 811 (267 SE2d 246) (1980).

" '[W]here notice is required to be given, it is generally held, in the absence of anything appearing to the contrary, that the notice is not complete until it is received; and that, while mailing a notice duly directed and stamped may furnish presumptive evidence of its receipt, it does not alone constitute notice. [Cits.]' [Cits.]" *Favors v. Travelers Ins. Co.,* 150 Ga. App. 741, 744 (258 SE2d 554) (1979) (construing statutory notice provision). See also *Hamilton v. Edwards,* supra (construing statutory notice provision). This is a rule not merely of statutory construction; it is also applicable in the construction of contracts. See *Puryear v. Farmers Mut. Ins. Assn.,* 137 Ga. 579, 581 (73 SE 851) (1911) (construing a policy of insurance); *Musgrove v. Long,* 248 Ga. 902 (287 SE2d 23) (1982) (construing an option to purchase). The operative provision in the notes in the

instant cases obligated appellee to "give" appellant notice, not merely to send him notice. Compare *Genone v. Citizens Ins. Co.,* 207 Ga. 83, 86 (2) (60 SE2d 125) (1950) (construing a policy of insurance). Nor did the provision otherwise provide that the mere mailing of written notice to appellant would in and of itself constitute the contemplated "giving" of the requisite notice. Compare *Genone v. Citizens Ins. Co.,* supra; *Favors v. Travelers Ins. Co.,* supra; *St. Paul Fire &c. Ins. Co. v. C.I.T. Corp.,* 55 Ga. App. 101 (189 SE 390) (1936). Under these circumstances, it would appear that the proper construction of the provision is that mailing of the notices was contemplated as the means and method by which notice to appellant would be effectuated, not the contemplated "notice" itself, and that for "notice to be effectuated appellant would have to have received them." *Puryear v. Farmers Mut. Ins. Assn.,* supra; *Hamilton v. Edwards,* supra; *Musgrove v. Long,* supra; *Favors v. Travelers Ins. Co.,* supra.

Accordingly, the instant cases come within the rule that, where notice is attempted to be effectuated by mail, there must be proof that the notice was received before the sender's action, which must be based upon the giving of "notice," is authorized. *Genone v. Citizens Ins. Co.,* supra at 87. Appellee's evidence that it mailed the notices and that they were returned as "unclaimed" rather than "refused" merely raised a presumption that appellant had received them and that he consequently had the requisite "notice of appellee's intent to accelerate the notes if the defaults were not cured within the specified time." See *Roland v. Shelton,* 106 Ga. App. 581, 584 (127 SE2d 497) (1962). However, appellant's uncontradicted evidence is that he did not receive them. "While proof that the notices were mailed raised a presumption that the defendant received them this presumption is a rebuttable one and is entirely overcome by the uncontradicted evidence of the defendant that [he] did not receive the notices. [Cits.]" *Roland v. Shelton,* supra at 585. "Where a properly stamped and addressed letter has been mailed . . . the presumption that it has been received is completely rebutted by undisputed testimony . . . that the letter was never received; unless there is additional evidence which tends to impeach or discredit [the] testimony [of non-receipt.] [Cit.]" *Rawleigh Medical Co. v. Burney,* 25 Ga. App. 20, 21 (4) (102 SE 358) (1920). "In the absence, however, of any evidence other than the fact that the letter was mailed, it would never do to charge with notice of the contents of a letter one who in fact never received it from the agency which the sender had himself selected. The presumption that the agency so selected did its duty and delivered the letter must yield to the presumption that the addressee, who positively swears that he did not receive it, is swearing the truth, unless some

additional circumstance be produced to impeach or discredit his statement and to show that perhaps he is not testifying truly." *Parker v. Southern Ruralist Co.,* 15 Ga. App. 334, 337 (83 SE 158) (1914).

Although appellee in the instant case was also an opponent to appellant's motion for summary judgment, it relied solely on the presumption of receipt that arises by proof of mailing and submitted no other evidence tending to impeach appellant's testimony of non-receipt or to show that the letters were in fact received. In view of appellant's unequivocal denial of receipt, appellee's submission of such additional evidence would be necessary "to raise an issue of fact for solution by the jury." *Parker v. Southern Ruralist Co.,* supra at 337. If appellee had any additional evidence concerning appellant's receipt of the notices other than the presumption of mailing, the time for submitting that evidence was in the context of the cross motions for summary judgment. See generally *Meade v. Heimanson,* 239 Ga. 177 (236 SE2d 357) (1977).

Accordingly, on the record before us the uncontroverted evidence conclusively demonstrates that although appellee attempted to give appellant written notice by mail of its intent to accelerate, appellant never received those notices. On this uncontroverted evidence, the presumption of receipt that arises by proof of mailing must yield to the presumption that appellant did not receive the notices and no jury question remained in that regard. *Parker v. Southern Ruralist Co.,* supra. Instead, appellant first received written notice of appellee's election to accelerate when the complaints were served. Within fifteen days of receiving those written notices, appellant unsuccessfully attempted to cure the defaults by paying the installment arrearages on the notes. On this evidence, the trial court erred in granting appellee's motions for summary judgment and in denying appellant's. See *Lee v. O'Quinn,* 184 Ga. 44, 46 (2) (190 SE 564) (1937). "[T]he evidence in this case demanded a finding that the letter[s] in question had never been received by the plaintiff . . ." *Rawleigh Medical Co. v. Burney,* supra at 21 (5).

This holding does not mean that any debtor may always avoid acceleration by not opening his mail. Our ruling is a narrow one and has application only to a debtor who is the maker of a note in which the acceleration clause provides that he be *given* written notice of the election to accelerate without further provision that the act of mailing alone is sufficient notice of this election and who, under the uncontroverted evidence, has not received the mailed notice of that election. Appellee could have contracted for the giving of no notice of its election to accelerate in the event of appellant's default. However, appellee having made the decision to contract for the giving of such

notice, it is the terms of the notes that appellee holds and the uncontroverted evidence in the instant cases, not appellant's mere status as a debtor, which mandate the result we reach in these appeals.

2. Remaining enumerations of error, not otherwise addressed, are rendered moot by our holding in Division 1 of this opinion.

3. The orders appealed from are reversed as to the grant to appellee and the denial to appellant of summary judgment.

*Judgments reversed. Deen, P. J., and Banke, J., concur specially.*

DECIDED OCTOBER 3, 1983.

*Thomas B. Benham, Todd K. Maziar,* for appellant.
*Guy Parker, J. Caleb Clarke III,* for appellee.

DEEN, Presiding Judge, concurring specially.

While agreeing with most of what is said in the majority opinion some reservations must be observed.

Cases referred to in the majority opinion appear to support the proposition that where notice is attempted to be effectuated by mail in certain particular cases, as here, there must be proof that the notice was actually given and received and not just sent before any legal action can be taken by sender. *Genone v. Citizens Ins. Co. of N. J.,* 207 Ga. 83, 86 (2) (60 SE2d 125) (1950). The presumption of receipt raised by mailing to the last known address, with sufficient first-class postage affixed, may be, as here, rebutted by uncontradicted evidence that there was no receipt. The majority indicates that when such evidence contradicting the presumption is set forth, the presumption dissolves entirely. *Roland v. Shelton,* 106 Ga. App. 581 (127 SE2d 497) (1962). In this regard I am concerned that this rule may supplant the traditional jury function of resolving questions of credibility.

Other cases, such as *Parker v. Southern Ruralist Co.,* 15 Ga. App. 334, 337 (83 SE 158) (1914), hold: "[W]hile the presumption must yield to positive, uncontradicted evidence that a letter shown to have been mailed was in fact not received, still the presumption may be so aided by other evidence, indicating that the letter was in fact received, as to raise an issue of fact for solution by the jury." Holding similarly is *American Tie &c. Co. v. Tyler,* 18 Ga. App. 640 (4) (90 SE 86) (1916): "Whether the presumption arising from the mailing of the letter was rebutted, and whether the contents thereof should receive any consideration whatever, was a *matter for the jury.*" (Emphasis supplied.) In *Wiard v. Phoenix Ins. Co.,* 166 Ga. App. 47 (303 SE2d 161) (1983), where the statutory requirement mandated only notice

of an "opportunity" to accept or reject mailed coverage offers, the actual receiving of the notice appears to be irrelevant because of the particular words of limitation contained in the statute. Yet in cases such as the one *sub judice,* regarding "giving" of written notice, there is growing support for allowing a jury determination as to just when the presumption of receipt evaporates. Green, Ga. Law of Evidence (2nd ed.), § 50, indicates that there is a lot to be said for leaving presumptions and other evidence for the factfinder. Some cases indicate that if in doubt the question should be resolved by the jury and not the court. Where we have a presumption on the one hand and opposing evidence on the other, it would appear that the jury, in many cases, could find either way.

Presumptions such as the presumption of sanity, although rebuttable and not conclusive, and the presumption against suicide never vanish, even when opposed by expert testimony, until it finally disappears in the jury room only when the jury decides and resolves the issue one way or the other. Compare the majority and dissent in *Floyd v. Colonial Stores, Inc.,* 121 Ga. App. 852 (176 SE2d 111) (1970), wherein the writer dissented, with the Supreme Court case of *Templeton v. Kennesaw Life & Acc. Ins. Co.,* 216 Ga. 770, 773 (119 SE2d 549) (1961). The latter case held in part: "In a case such as we are dealing with here, the only place the presumption vanishes is in the jury room, and the time it vanishes is when the jury, in consideration of all the facts and circumstances, determines that the preponderance of the evidence is against the theory of accident; and where that decision is arrived at, the presumption against suicide, like all other circumstances and inferences in favor of accident, vanishes.

"Courts should be careful, in the absence of direct mandate of law, to take away from juries questions that time and experience have proven should be left exclusively for determination by the jury. The admonition of Judge Bleckley in an opinion prepared for the court in the case of *Kinnebrew v. State,* 80 Ga. 232, 238, 239 (5 SE 56), is worthy of repetition here. 'The judge cannot pilot the jury in their passage by inference from fact to fact, but he can point out the line of transit which the law authorizes them to follow if they think the facts in evidence sustain them in taking that route. Presumptions of law are conclusions and inferences which the law draws from given facts. Presumptions of fact are exclusively questions for the jury, to be decided by the ordinary test of human experience. *Code,* § 3752. This plain distinction only needs to be understood, and applied with due discrimination, to reduce to the minimum all just complaint of encroaching on the province of the jury in the matter of drawing inferences. Doubtless, all presumptions of law not originating in

statutes were once presumptions of fact, and gradually developed into presumptions of law by a process of evolution; and most probably many inferences and conclusions destined to become presumptions of law in the future, are now in the formative stage, passing and repassing through the jurybox. Before any presumption, not manufactured by the legislature, can mount to the bench, it has to serve for a long season on the jury, and be trained for judicial administration . . . To instruct them that they are legally authorized to infer one thing from another, or from certain others, but that they are to decide for themselves both whether the given premises are true, and whether the inference can and ought in fact to be made, is only to say that the law permits them to reason in the manner indicated, if they determine that the evidence and the ordinary test of human experience warrant them in so doing.' *Kinnebrew v. State,* 80 Ga. 232, 238, 239, supra." *Id.* at 773. While it is clear from the above that a factual presumption, if it meets the Bleckley test, may gradually change and evolve into a presumption of law, independent from a statutory origin; nevertheless, it is still a presumption, nothing more — nothing less.

In some cases, as apparently in the instant case, it may be said: "Presumptions may be looked on as the bats of the law, flitting in the twilight, but disappearing in the sunshine of actual facts." Mockowik v. Kansas City, Etc. R. Co., 196 Mo. 550 (94 SW 256, 262). On the other end of the spectrum are conclusive presumptions such as the presumption that everyone knows the law. *City of Dawson v. Bolton,* 166 Ga. 232, 237 (143 SE 119) (1928). *Mayor &c. of Savannah v. Wade,* 148 Ga. 766 (2) (98 SE 464) (1919). But compare OCGA §§ 23-2-22 and 23-2-23 (Code Ann. §§ 37-204, 37-205).

The case of *Rawleigh Medical Co. v. Burney,* 25 Ga. App. 20 (102 SE 358) (1920), cited in the majority opinion is not exactly on point, as the letter in that case was not placed in the mailbox but was "placed in a cigar box in a grocery store." The aliunde evidence discussed in Division 3 of the latter case would seem to suggest that in a jury trial other evidence might be forthcoming. In the instant case we do not know what any aliunde evidence might be since there has been no jury trial.

Our cases now indicate that on summary judgment when essential allegations have been pierced the burden shifts, thus requiring a party to put up one's best case including any aliunde evidence, otherwise no jury trial will then be forthcoming. Compare *Presser v. Rayner,* 166 Ga. App. 633 (305 SE2d 149) (1983). The aliunde evidence may be direct evidence which will carry the case to the jury. It may also be circumstantial evidence which is inconsistent with opposing direct positive testimony as long as it also tends in

some proximate degree to establish the conclusion projected while rendering less probable all inconsistent conclusions. *Collins v. Everidge,* 161 Ga. App. 708 (289 SE2d 804) (1982); *Allen Kane's Major Dodge v. Barnes,* 243 Ga. 776 (257 SE2d 186) (1979). While generally direct evidence is to be preferred, e.g., the witness sees A stab B, yet in some situations circumstantial evidence seems to be no less trustworthy if not superior, e.g., "There is still no man who would not accept dog tracks in the mud against the sworn testimony of a hundred eye-witnesses that no dog has passed." W. Prosser, Law of Torts, 212 (4th ed. 1971). See *Brown v. Matthews,* 79 Ga. 1 (4 SE 13) (1887), where it was observed: "Amongst the facts best proved is one which no witness has mentioned in his testimony, such fact being an inference from other facts." If one non-expert has knowledge, "her knowledge would, and ought to, outweigh the opinion of a whole college of physicians — because theirs is at last opinion — mere opinion..." *Truelove v. Hulette,* 103 Ga. App. 641, 644 (120 SE2d 342) (1961). This is true unless the exact subject is one *solely* within knowledge of experts. *Crawford W. Long Hosp. v. Mitchell,* 100 Ga. App. 276 (111 SE2d 120) (1959).

Since notice in the case at hand was required to be actually given and not just sent, I concur with reservations made in the judgment of reversal.

I am authorized to state that Judge Banke joins in this special concurrence.