74008. CORBITT et al. v. HARRIS et al.
(354 SE2d 637)

DEEN, Presiding Judge.

In 1972 appellee J. Wesley Harris entered into a partnership agreement with appellants or their predecessors in interest for the purpose of conducting certain real estate transactions. In December 1982 an audit of the partnership was conducted so as to determine the worth of the partners' respective interests with a view to one partner's selling his interest to an outsider. The audit disclosed a discrepancy in the allocation of the partnership funds amounting to at least $95,000. Appellee J. Wesley Harris, who had acted as managing partner and also as the partnership's real estate agent in the sale and rental of partnership properties, acknowledged the possibility that he was indebted to the partnership in an amount approximating the discrepancy but contended that the discrepancy was due at least in part to bookkeeping errors. He offered to (and subsequently did) convey to the partnership his interest in the partnership, amounting coincidentally to approximately $95,000, so as to "satisfy this obligation . . . until . . . it is resolved."

At the same time that the document containing the above statement was executed by appellee and the other partners, they executed an amendment to the partnership agreement which stated, *inter alia*: "It is agreed that by the signing of this agreement . . . no claims of any kind will be brought against J. Wesley Harris and/or Harris Real Estate Services concerning this . . . venture." Subsequent proceedings revealed that Harris' records were hopelessly muddled and incomplete and that, for whatever reason, it would be very difficult to account for all the partnership funds that had passed through his hands during the approximately ten years between the formation of

the partnership and the audit which led to the discovery of the discrepancy.[1] At issue in the trial court and on this appeal is which one of the two apparently conflicting statements quoted supra controls: i.e., did the partners unconditionally release J. Wesley Harris and his alter egos forever from any and all claims arising in any manner whatsoever from the partnership venture, or did they release him only to the extent of the approximately $95,000 interest that he conveyed to them in December 1982?

The partners instituted a complaint against appellee alleging fraudulent conversion of partnership funds (Count I) and breach of the partnership contract (Count II). Appellee moved for summary judgment on both counts. The trial court denied summary judgment on Count II but conditionally granted partial summary judgment on Count I, holding that, in order to rescind the contract for fraud and sue in tort rather than affirm the contract and sue for damages, the partners must first tender back to appellee the interest conveyed to them in December 1982. The court allowed appellants twenty days to do this and thereby avoid partial summary judgment against them on Count I.

The partners declined to do this within the specified twenty days and thereafter applied for and received a certificate of immediate review of the order conditionally awarding partial summary judgment on Count I. Enumerated as error is the trial court's award of partial summary judgment. *Held*:

The general rule governing rescission of a contract for fraud is set forth in OCGA § 13-4-60: "A contract may be rescinded at the instance of the party defrauded; but, in order to rescind, the defrauded party must promptly, upon discovery of the fraud, restore or offer to restore to the other party whatever he has received by virtue of the contract if it is of any value." See, e.g., *Kerlin v. Young*, 159 Ga. 95 (125 SE 204) (1924); *Thomson v. Walter*, 160 Ga. App. 542 (287 SE2d 562) (1981). To effect a complete rescission, all the parties must be returned as nearly as possible to the *status quo ante*; there is no room for one party to have its cake and eat it, too. Ordinarily, then, one cannot in equity seek to rescind a contract (here, the partnership agreement as amended by appellee J. Wesley Harris' conveyance to the other partners of his interest in partnership property) on the ground of fraud, and at the same time retain the benefits derived from that contract (here, the approximately $95,000 interest conveyed in the amended partnership agreement). See, e.g., *Jordy v. Dunlevie*, 139 Ga. 325 (77 SE 162) (1913); *Roberts v. Southern R. Co.*, 73 Ga. App. 759 (38 SE2d 48) (1946).

---

[1] There was evidence that the total discrepancy might amount to as much as $200,000.

However, where, as in the instant case, there is evidence tending to show that the amount received under the contract by those seeking to rescind may be less than the amount to which they are actually entitled, and that the opposing party may be still in possession of funds owing to the plaintiffs, the rule is otherwise: " 'a party is not obliged to return that which he is entitled to retain.' . . . Equity does not require the useless procedure upon the part of the plaintiff to return a part of [the amount in issue] only to have it included in the larger sum due her and which she seeks to recover." *Farnell v. Brady*, 159 Ga. 209, 210 (125 SE 57) (1924); *Krawagna v. H & S Liquor*, 176 Ga. App. 816 (338 SE2d 284) (1985); *Atlanta Life Ins. Co. v. Walker*, 53 Ga. App. 80 (184 SE 776) (1936). Our view of the instant case, based upon a thorough examination of the entire record, is that its facts bring it within the special rather than the general rule, supra, and that the trial court erred in making its grant of summary judgment contingent upon the partners' tender or non-tender of Harris' former partnership interest.

Moreover, fraudulent intent is implicit in the definition of conversion. See Black's Law Dictionary, Fifth ed. (1979), pp. 300, 590. See also OCGA § 16-8-4; *Smith v. State*, 229 Ga. 727 (194 SE2d 82) (1972); *Baker v. State*, 143 Ga. App. 302 (238 SE2d 241) (1977). The record makes it clear that the trial court was correct in holding that factual issues, including that of fraud, exist in the case. Therefore, it would be necessary for there to be a trial on all the issues raised pursuant to Count I, including, but not limited to, fraud and release *vel non*.

Further, on summary judgment, the movant has the burden of showing that "there is no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). When, as in the instant case, the movant is the defendant, he has the additional burden of piercing the plaintiff's pleadings and affirmatively negating one or more essential elements of the complaint. *Fort v. Boone*, 166 Ga. App. 290 (304 SE2d 465) (1983); *Calhoun v. Eaves*, 114 Ga. App. 756 (152 SE2d 805) (1966); *Watkins v. Nationwide Mut. &c. Ins. Co.*, 113 Ga. App. 801 (149 SE2d 749) (1966). Our scrutiny of the record persuades us that movant/defendant J. Wesley Harris failed to carry these burdens, and that the trial court erred in granting partial summary judgment on Count I of the complaint.

*Judgment reversed. Birdsong, C. J., and Pope, J., concur.*

DECIDED FEBRUARY 23, 1987 —
REHEARING DENIED MARCH 10, 1987 —

*Velma C. Tilley*, for appellants.

*Sherman C. Fraser*, for appellees.