A97A1069. BBB SERVICE COMPANY, INC. et al. v. GLASS.
(491 SE2d 870)

ELDRIDGE, Judge.

As an alleged result of negligent maintenance, appellee Shirley Glass slipped and fell in a restaurant owned and operated by appellants BBB Service Company, Inc., and Dale Seefeldt d/b/a Wendy's Old Fashioned Hamburgers; her hip was broken in the fall. Appellee brought suit against appellants for actual and punitive damages, contending that, due to the alleged improper maintenance, appellants were actively negligent in operating the restaurant with unsafe, slippery, and defective floors, and that appellants knew of the condition but failed to remedy it. Appellants' subsequent motion for summary judgment was denied by the trial court, which found that material issues of fact existed that should be tried to a jury. We granted appellants' application for review and take this opportunity to affirm the order of the trial court and explain the evidentiary posture of the instant case which distinguishes it from those cases cited by appellants, *Alterman Foods v. Ligon*, 246 Ga. 620 (272 SE2d 327) (1980), and *Hall v. Cracker Barrel Old Country Store*, 223 Ga. App. 88 (476 SE2d 789) (1996). Pertinent to appellee's complaint, the facts of record are as follows.

After eating lunch at Wendy's, appellee walked down a brick tile hallway to the restroom area; she slipped and fell just outside the ladies' restroom door, where there was nothing visible on the floor to warn appellee of danger.[1] Appellee testified that, while lying on the floor unable to get up, she ran her hand over the brick tile and noticed that the floor felt "very slick"; earlier, appellee had noted and then disregarded a slippery spot on the floor in a different area of the restaurant. Jean Brown, appellee's co-worker, testified that she came to appellee's aid, and "I ran my foot over the floor, and I had on rubber-soled flat shoes, and I noted that the floor was slippery"; earlier, Brown had skidded on the floor as she was walking to a table.

The manager of Wendy's, Bruce Payton, approached to render aid to appellee. Brown and appellee questioned him about the slippery condition of the floor and its danger to customers. According to Brown's testimony, Bruce Payton agreed that the floors were slippery. "[H]e said it was something they put on the floors, that Wendy's has them put on the floors, but it wasn't wax. . . . He didn't say how long ago it was, but that he had talked to, I guess you call it the corporate office, about the floors, about the condition of the floors, but that they did not feel that there was any need to make any changes."

Appellee Glass also testified that Bruce Payton had agreed that the floors were slippery. "He named some chemical. I don't remember exactly what he said the chemical was that they put on the floors. . . . He said, we have talked to the corporate office before about the floors, and they will not do anything about them. . . . They [corporate office] were going to continue doing the same thing that they were doing and they would not change the floors."

In support of its summary judgment motion, appellants offered the testimony of restaurant manager Bruce Payton, who denied that he had ever made any statements to appellee or Brown regarding the floor, its condition, or its maintenance, and denied making any statements concerning conversations with Wendy's corporate office. Payton also testified that the "policy" for floor maintenance at the restaurant "is pretty consistent with Wendy's International." Payton testified regarding the Wendy's International "policy and procedures" for sweeping, mopping, and cleaning the floor: "[t]he floors are cleaned at night after close with Power Foam, deck brushed, which means scrubbed, and then it's squeegeed off and dry mopped. It's dry mopped again the next morning before we open around 9:00 o'clock." Bruce Payton stated that store employees do the mopping, sweeping, and vacuuming.

---

[1] All parties agree that the floor was dry and had no obvious, visible foreign substance on it.

Appellants also submitted the affidavit of Jack Helton, vice president of the company that manufactures and distributes Power Foam, regarding the composition, properties, and proper usage of the product. Helton testified that Power Foam is a commercial degreaser, which acts to "emulsify and neutralize dirt and grease from hard surfaces"; obviously, such product creates an emulsion of grease and dirt when it is applied to the floor. Helton testified regarding the *proper removal* of Power Foam, which entails "removal with squeegee and rinsing with clear water"; clearly, subsequent dry mopping would simply spread the grease emulsion, if it is not first removed properly.[2] Helton testified that Power Foam contains no properties, in and of itself, that would cause a floor to become slippery; however, the non-slippery character of the degreaser itself would be irrelevant if the resultant greasy emulsion is not properly removed, which event could support a claim of active negligence.

Further, in response to appellee's interrogatory "[i]dentify defendants' maintenance practice in sweeping, mopping and surfacing/waxing the flooring in the area where plaintiff fell," appellants responded that "[t]he floor in this area is cleaned with warm water and a degreaser. During regular business hours, we sweep the floors hourly and dry mop spills immediately using only clear warm water. Then in the late afternoon we dry mop all floors. The brick tile are not waxed." *Held*:

Trial and appellate judges should not take summary judgment lightly, for what is at stake is of constitutional magnitude. "When a trial court or appellate court determines that summary judgment or a directed verdict is appropriate, it is in effect a determination that a party is not entitled to his or her right to a trial by jury even after a demand for jury trial has been made. See Ga. Const. of 1983, Art. I, Sec. I, Par. XI; OCGA § 9-11-38." *Service Merchandise v. Jackson*, 221 Ga. App. 897, 899 (473 SE2d 209) (1996); see *Lingo v. Kirby*, 142 Ga. App. 278 (236 SE2d 26) (1977).

On a motion for summary judgment, the burden of establishing the nonexistence of any genuine issue of material fact is upon the movant. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991) (to prevail at summary judgment, "the moving party must demonstrate that there is *no* genuine issue of material fact" (emphasis supplied)); accord *Alterman Foods*, supra at 625; *Hall*, supra at 89.[3] This

---

[2] If further clarity is necessary for some, the statements of Helton are, of course, in quotes. Reasonable inferences drawn therefrom are, of course, on the other side of the punctuation mark appearing at the conclusion of the quoted material.

[3] See also OCGA § 9-11-56 (c) (movant must "show that there is *no* genuine issue as to any material fact (emphasis supplied)); *Marsh v. Berens*, 237 Ga. 135, 136 (227 SE2d 36) (1976) (on a motion for summary judgment, the burden of establishing the nonexistence of any genuine issue of material fact is upon the movants, and the evidence must be construed

has often been referred to as "piercing" the allegations of the complaint, which is an apt metaphor since, if accomplished, the life of the complaint is in jeopardy through such exposure. This burden placed upon the movant *"may* be," if it can be, discharged by pointing out by reference to the record that there is an absence of evidence sufficient to create a jury issue on at least one essential element of the plaintiff's case. *Lau's Corp.*, supra at 491.

Contrary to the opinion of the special concurrence,[4] the Supreme Court of Georgia's decision in *Lau's Corp.* did not, and could not, alter the statutory burden and showing that must be made in order to prevail at summary judgment, i.e., a defendant's burden to demonstrate the nonexistence of a genuine issue of material fact in support of an essential element of plaintiff's claim. OCGA § 9-11-56 (c). Such alterations must be accomplished through the legislative process, not through judicial mandate. *Oxford v. J. D. Jewell, Inc.*, 215 Ga. 616, 620-621 (112 SE2d 601) (1960); *Beall v. Beall*, 8 Ga. 210, 228-229 (1850).

What *Lau's Corp.* did do that may be considered a "watershed" is establish the precedent that a defendant may meet its burden of demonstrating the nonexistence of a material issue of fact by showing an *absence* of evidence of record in support of an essential element of the plaintiff's claim.[5] *Lau's Corp.*, supra at 495. The *Lau's Corp.* Court reasoned that, since a defendant is not required to produce evidence at trial which *affirmatively* negates (proves the opposite of) an essential element of the plaintiff's case, he should not be required to put forward such evidence as movant in a motion for summary judgment in order to disprove plaintiff's case. *Lau's Corp.*, supra at 495. Prior to *Lau's Corp.*, our appellate courts placed upon the defendant a burden to "affirmatively" and "conclusively" negate an element of the plaintiff's case. See, e.g., *Ryder Truck Rental v. Carter*, 189 Ga. App. 43, 44 (374 SE2d 830) (1988) (defendant has the "burden of negating conclusively at least one of the essential elements of the plaintiff's case"); *Corbitt v. Harris*, 182 Ga. App. 81, 83 (354 SE2d 637) (1987) (defendant has "additional burden of piercing the plaintiff's pleadings and affirmatively negating one or more essential elements of the complaint"); accord *Fort v. Boone*, 166 Ga. App. 290, 291 (304 SE2d 465) (1983). Thus, *Lau's Corp.* changed *how*

---

most strongly against them).

[4] Accord in other opinions authored thereby, e.g., *Coffey v. Wal-Mart Stores*, 224 Ga. App. 824 (482 SE2d 720) (1997); *Harrison v. Golden*, 219 Ga. App. 772, 774 (466 SE2d 890) (1995); see also *Van Dyke v. Emro Mktg. Co.*, 211 Ga. App. 744, 748 (440 SE2d 469) (1993) (Birdsong, P. J., dissenting).

[5] To the extent that a form of semantic legerdemain may be attempted by some, "absence" is the noun form of the adjective "absent" meaning, *"not existent."* (Emphasis supplied.) American Heritage Dictionary of the English Language, 3rd ed., p. 6.

a defendant may discharge his statutory burden, but did not alter the fact that he *must* discharge his statutory burden in order to prevail on summary judgment. It was the requirement of negating an element of the plaintiff's case through the production of *"affirmative, conclusive"* evidence and the line of cases standing therefor that was overruled in *Lau's Corp.* at 495, not the statutory burden compelling the defendant to demonstrate the nonexistence of an issue of material fact in support of an essential element of plaintiff's claim, which burden is discussed in *Lau's Corp.* at 491. Repeated efforts in decisions authored by the special concurrence to combine the two discussions and concepts on pages 491 and 495 of *Lau's Corp.* serve only to confuse.[6] Under *Lau's Corp.*, supra at 495, a movant for summary judgment must still "disprove" an essential element of the plaintiff's claim, but he need not do so through the introduction of affirmative, conclusive evidence proving the *opposite* of the challenged element of the non-moving party's case. Id. (defendant not required to establish that its alleged negligence was *not* the cause of plaintiff's injuries). A demonstration, via the record, of the nonexistence of an issue of material fact in support of an essential element of plaintiff's claim will suffice to "disprove" such claim and discharge the defendant's burden.

It also must be understood that the holding in *Lau's Corp.* permitting a defendant to meet his statutory burden by showing an absence of evidence to support an issue of material fact as to an essential element of plaintiff's claim does not shift the burden to plaintiff and require the plaintiff to *conclusively* prove its case at summary judgment or risk defendant's ability to demonstrate an "absence" of evidence in support thereof. For example, a *defendant* has the burden at trial to prove any affirmative defenses, such as contributory negligence and comparative negligence. Thus, a defendant cannot prevail at *summary judgment* by pointing out an "absence" of evidence disproving such affirmative defenses, with regard to which *plaintiff* had no burden in the first place.[7] *Hodge v. Sada Enterprises*, 217 Ga. App. 688, 691 (458 SE2d 876) (1995). That a plaintiff's evidentiary requirements should be no more stringent

---

[6] See, e.g., *Coffey v. Wal-Mart Stores*, supra at 827; *Blake v. Kroger Co.*, 224 Ga. App. 140, 145 (480 SE2d 199) (1996); *Harrison v. Golden*, supra at 774; *Turner v. Sumter Self Storage Co.*, 215 Ga. App. 92, 93 (449 SE2d 618) (1994); *Renden, Inc. v. Liberty Real Estate &c.*, 213 Ga. App. 333, 334 (444 SE2d 814) (1994); *Wade v. Mitchell*, 206 Ga. App. 265, 266 (424 SE2d 810) (1992); *Shansab v. Homart Dev. Co.*, 205 Ga. App. 448, 449 (422 SE2d 305) (1992).

[7] Although a plaintiff has a burden of *production*, i.e., presenting any evidence which creates a material issue of fact as to an element of the affirmative defense, a plaintiff has no duty to present evidence *disproving* an affirmative defense on summary judgment. *Hodge*, supra at 691.

than a defendant's on summary judgment, wherein the defendant has the burden of proof as movant, should be apparent to even those whose approach to summary judgment may most charitably be deemed as result-oriented. For this reason, too, a defendant's bid to demonstrate an absence of evidence to support an essential element of the plaintiff's case is not met through the introduction of conflicting evidence or by demonstrating weakness in the plaintiff's case; it is satisfied by showing a complete absence of any evidence (i.e., "no evidence"; "nonexistence") as to an essential element of plaintiff's claim. *Lau's Corp.*, supra at 491 ("documents, affidavits, depositions and other evidence in the record reveal that there is *no* evidence sufficient to create a jury issue on at least one essential element of *plaintiff's* case" (emphasis supplied)).

Moreover, it is only *after* a defendant has met the burden to show the nonexistence of a material issue of fact as to an essential element of plaintiff's claim that *any* burden is placed upon the plaintiff; prior to a trial court's determination that a defendant has "pierced" the pleadings, there is no duty upon the plaintiff.[8] *Lau's Corp.*, supra at 491 (*if* the moving party discharges the burden to show an absence of material issues of fact, then the nonmoving party cannot rest on pleadings but must point to specific evidence giving rise to a triable issue); accord *Alterman Foods*, supra at 625. Often lost in this process is the requirement that all evidence must be construed most strongly *against* the party seeking summary judgment and all favorable inferences belong to the non-moving party. *Lau's Corp.*, supra at 491. Clearly, then, summary judgment is *not* a proceeding in which the trial court weighs and evaluates the record and then determines the merits of the case based upon which party has produced the most compelling evidence therein.[9] Instead, the trial court, viewing all the evidence in a light most favorable to a denial of summary judgment, determines only if there is no evidence of record *at all* to create a jury issue as to an essential element of the plaintiff's claim, thereby making the defendant entitled to summary judgment as a matter of *law*, not fact. OCGA § 9-11-56 (c).

Obviously, to the extent that *Coffey v. Wal-Mart Stores*, supra at

---

[8] *Barber v. Threlkeld Ford*, 199 Ga. App. 787, 788 (406 SE2d 249) (1991) ("The burden of showing the absence of a genuine issue of any material fact rests on the party moving for summary judgment; no duty devolves upon the opposing party to produce rebuttal evidence unless the movant first makes a prima facie showing of right to a summary judgment. . . . *Lockhart v. Walker*, 124 Ga. App. 241 (183 SE2d 503) (1971)."); see also OCGA § 9-11-56 (e) (*when* motion for summary judgment is supported by showing no material issue of fact, then adverse party may not rest upon pleadings but must set forth specific facts showing genuine issue for trial).

[9] Cf. *Blake v. Kroger Co.*, supra at 145 (trial court determines whether there is any *genuine* issue of material fact (emphasis in original)).

827, *Blake v. Kroger*, supra, and *Summer-Minter & Assoc. v. Giordano*, 231 Ga. 601, 604 (203 SE2d 173) (1974), conflict with *Lau's Corp.* and OCGA § 9-11-56, they are not valid precedent.

With the above provisions in mind, appellant Wendy's had the burden to establish the nonexistence of a material factual issue in support of an essential element of plaintiff's claim. OCGA § 9-11-56 (b), (c); *Lau's Corp.*, supra at 491; *Alterman Foods*, supra at 625. Accordingly, this Court finds that appellants' summary judgment motion fails on two fronts that we will address in inverse order: (1) the evidence introduced by appellee was sufficient to raise material issues of fact for trial; and (2) in drawing all inferences favorable to appellee, appellants' evidence failed to pierce the allegations of the complaint so as to support its motion for summary judgment.[10]

1. Appellants claim that the evidence introduced in support of its summary judgment motion demonstrated that its floor is maintained under industry standards and is not treated with anything that would cause appellee to slip and fall when the commercial degreaser used on its floors is properly applied and removed. This proof, appellants contend, is sufficient to warrant summary judgment as a matter of law, since appellee proved only that she fell, without proving that appellants were "negligent either in the materials . . . used in treating the floors or in the application of them." *Alterman Foods*, supra at 624. Appellants contend that the instant case is controlled by *Alterman Foods* and *Hall* and cite both opinions for the proposition that proof of a fall establishes nothing, i.e., "proof of nothing more than the occurrence of the fall 'is insufficient to establish the proprietor's negligence." (Punctuation omitted.) *Hall*, supra at 90. We agree that the instant case is controlled by the cited authorities, but cannot agree with appellants' application thereof in connection with the facts of this case.

*Alterman Foods* and *Hall* stand for nothing if not for the proposition that proof of a fall *alone* is insufficient to prove negligence. In *Alterman Foods*, the court was faced with evidence that showed only that plaintiff fell; plaintiff "did not notice the floor to be any more slippery than it had been on any other day she had been in the store[;] she did not see what she had slipped on[;] she did not know if there was a foreign substance on the floor which had caused her fall or if her fall was due to the slipperiness of the floor itself." *Alterman Foods*, supra at 621. Plaintiff "merely stated that she slipped and fell, but that she *could not determine what it was that caused her fall.*" (Emphasis in original.) Id. at 624. Further, deposition testimony

---

[10] In fact, defense evidence created a jury issue by explaining the potentially hazardous, slippery condition that could arise if the commercial degreaser used on appellants' floor is not properly removed.

from persons present at the time showed that there was nothing "unusual about the floor." Id. at 621. Finally, plaintiff had a physical condition which could have caused the fall. Id. In *Alterman Foods*, the plaintiff's fall was the *only* evidence upon which to base her claim of negligence, and "[i]t cannot be inferred from a silent record that defendant negligently maintained its floor." Id. at 625.

The same scenario was presented to this Court recently in *Hall*, wherein the plaintiff's evidence demonstrated only that she fell and that the floor "just felt slippery." *Hall*, supra at 90-91. In *Hall*, the evidence failed to raise a material issue of fact that the floor was slippery; no evidence was introduced to demonstrate that the cleaning compound utilized contained a degreaser which "emulsified" grease and required a proper method of removal; and no evidence was introduced to demonstrate that negligent application or removal of the degreaser would, in fact, leave the floor slick. In *Hall*, no viable evidence, other than the fall itself, was introduced to rebut the defense evidence that a defective condition did not exist; that the care of the floor was not negligent; and that the proprietor had no actual or constructive knowledge of the alleged hazard.[11] Id. at 92.

However, while "[f]alling and injuring one's self proves nothing," *Alterman Foods*, supra at 625, proof of a fall, *in conjunction with other evidence*, can be circumstantial evidence of negligence so as to raise a jury question. The dearth of additional evidence in both *Alterman Foods* and *Hall* is not the situation in the case before us, wherein appellee offered deposition testimony of her own, as well as that of a witness, showing that the floor *was*, in fact, slippery; that appellants' restaurant manager knew that the floor was slippery and had so informed the "corporate office"; that appellants put a "chemical" on the floor that made it slippery; and that appellee fell. Even without the restaurant manager's statements, the deposition testimony of witness Jean Brown that she ran her rubber-soled shoe over the floor area where the fall occurred, that the floor *was*, in fact, slippery, and that she had skidded on the floor earlier corroborated appellee's testimony that the slippery floor caused her fall. This testimony would clearly provide sufficient evidence of facts, other than the fall itself, so as to take the instant case outside the holding of *Alterman Foods*, supra, thereby defeating appellants' motion for summary judgment based thereon. See *Martin v. Sears, Roebuck & Co.*, 253 Ga. 337 (320 SE2d 174) (1984) (plaintiff's ability to feel excessive wax as she walked across the floor was sufficient to defeat a motion for directed verdict); see also *Hall*, supra at 93 (affidavit from

---

[11] In *Hall*, this Court presented a list of possible evidentiary approaches by which a plaintiff might survive summary judgment. See *Hall*, supra at 92-93.

co-worker who had slipped contemporaneously with plaintiff would have provided sufficient evidence to overcome summary judgment).

Appellants, again citing *Alterman Foods* and *Hall*, contend that appellee cannot survive the motion for summary judgment because appellee failed to show that appellants were "negligent either in the materials [it] used in treating the floor or in the application of them." *Alterman Foods*, supra at 624; *Hall*, supra at 90. Again, we agree with appellants regarding the substance of the citations from *Alterman Foods* and *Hall*, but find that appellants' argument is incorrect.

*Alterman Foods* and *Hall* do not place an impossible burden upon a plaintiff to provide *direct evidence* of the misapplication of a floor maintenance product in order to survive a motion for summary judgment where defense evidence is presented showing compliance with industry standards in floor care. A case of negligence can "be made by circumstantial evidence." *Chapman v. Turnbull Elevator*, 116 Ga. App. 661, 665 (158 SE2d 438) (1967). The "evidence may be direct evidence which will carry the case to the jury. It may also be circumstantial evidence which is inconsistent with opposing direct positive testimony as long as it also tends in some proximate degree to establish the conclusion projected while rendering less probable all inconsistent conclusions." *Menke v. First Nat. Bank of Atlanta &c.*, 168 Ga. App. 495, 502-503 (309 SE2d 835) (1983) (Deen, P. J., concurring specially). Allowing a defendant company to win at summary judgment because the plaintiff cannot provide direct evidence to contradict defendant's proof that it maintains its floor pursuant to industry standards would permit a "drift toward a [non-jury] issue in every 'slip and fall' case." See *Alterman Foods*, supra at 621.

For example, in the case sub judice, appellee would never be in a position to witness appellants' floor being cleaned after hours so as to have personal knowledge regarding the floor care product utilized, its application, or its removal in order to rebut evidence of compliance with industry standards. Further, obtaining testimony from one in a position to know, one who would jeopardize employment by testifying for a plaintiff regarding a defendant's floor care, is unlikely at best. It is for this reason that proof of negligence in either the materials used in treating a floor or in the application and removal of materials, such as a degreaser, will most often be proved by circumstantial evidence.[12] In the case before us, appellants' own evidence showed that

---

[12] "While generally direct evidence is to be preferred, e.g., the witness sees A stab B, yet in some situations circumstantial evidence seems to be no less trustworthy if not superior, e.g., 'There is still no man who would not accept dog tracks in the mud against the sworn testimony of a hundred eye-witnesses that no dog has passed.' W. Prosser, Law of Torts, 212 (4th ed. 1971). See *Brown v. Matthews*, 79 Ga. 1 (4 SE 13) (1887), where it was observed:

its floor, if properly treated, is not slippery; since appellee presented evidence that the floor *was* slippery and that she fell, such is circumstantial evidence that the floor was not properly treated. Thus, appellee's fall, in conjunction with other evidence demonstrating the tangibly slippery condition of the floor at the time of her fall, is sufficient to create a jury issue as to whether appellants were negligent in either the material used in treating the floors or in its application, without direct evidence thereof.

So, we conclude that, while appellants may, or may not, win a jury trial by showing that its floor maintenance meets or exceeds industry standards, summary judgment is not so won in the face of the evidence in the instant case, more than the fall itself, demonstrating that the floor was, in fact, slippery. *Alterman Foods*, supra at 624; *Hall*, supra at 93. Accordingly, the trial court correctly denied appellants' motion for summary judgment.

2. Moreover, "[t]he party opposing the motion [for summary judgment] is to be given the benefit of all reasonable doubts in determining whether a genuine issue exists and the trial court must give that party the benefit of all favorable inferences that may be drawn from the evidence." (Citations omitted.) *Holland v. Sanfax Corp.*, 106 Ga. App. 1, 5 (126 SE2d 442) (1962). With all inferences resolved in appellee's favor, the evidence introduced by appellants failed to pierce the allegations of the complaint so as to support its motion for summary judgment. In fact, appellants' own evidence explains how normal maintenance, when improperly performed, may make its floor slippery.

As to the floor's maintenance, the evidence introduced by appellants demonstrated only the "policy and procedures" utilized for floor maintenance; such evidence never advanced beyond the theoretical. No evidence was introduced regarding the actual cleaning of the floor prior to the incident in question, and no evidence was introduced demonstrating that the stated "policies and procedures" were actually followed by the cleaning crew. See *Mallory v. Piggly Wiggly Southern*, 200 Ga. App. 428, 430 (408 SE2d 443) (1991); *Food Giant v. Cooke*, 186 Ga. App. 253, 255 (366 SE2d 781) (1988). The restaurant manager, who testified regarding the normal cleaning procedures, also testified that he does not clean the floor, his employees have that responsibility; moreover, he did not provide any testimony regarding the actual cleaning of the floor prior to appellee's fall.

In fact, the restaurant manager's answer to the appellee's interrogatory regarding cleaning procedures differed significantly from

---

'Amongst the facts best proved is one which no witness has mentioned in his testimony, such fact being an inference from other facts.' " *Menke*, supra at 503. The drawing of such inference is obviously a function of the jury, raising an issue therefor.

his testimony regarding the restaurant chain's "policy and procedures," leaving out both the "deck brush" scrubbing of the floor and the "squeegee" removal of the cleaning agent. With all inferences drawn in appellee's favor, such evidence failed to show that appellants maintained its floor in a non-negligent fashion and could support the inference that appellants did not maintain its floor according to its own policies and procedures. As appellants argue, when normal, i.e., non-negligent, maintenance of the floor is carried out, the floor is not slippery; a fortiori, if the floor is slippery, there may have been negligence in the maintenance of the floor. At the very least, a jury issue is raised thereon. Thus, this evidence fails to "pierce" the allegations of the complaint so as to support a motion for summary judgment.

Also, appellants submitted as evidence the affidavit of Jack Helton, who testified that the floor cleaning agent used by appellants, Power Foam, is a degreaser that "cuts" grease on the floor. While Helton testified that Power Foam itself has no properties that would make a floor slippery, Helton testified that Power Foam "emulsifies" grease when applied to a surface in order to aid in the removal of grease, i.e., causes grease to become suspended in liquid emulsion so that it can be easily removed. Thus, a cleaning product that emulsifies grease has the potential to create a hazardous, slippery condition on any surface to which it is applied, because emulsified grease remains on a surface and may be spread thereon until proper removal.

Thereafter, Jack Helton testified as to the proper removal of Power Foam, which includes using a "squeegee" to remove the agent from the floor surface prior to mopping with warm water. All inferences drawn in appellee's favor permit the deduction that a floor cleaning product that causes grease to emulsify and requires proper removal may be improperly removed, thereby creating a slippery condition on the floor. Since in the case before us, evidence was introduced that the floor was in fact slippery, the inference arises that the grease emulsion, created by the application of Power Foam, was not properly removed. Accordingly, Jack Helton's testimony raises, in itself, a jury issue regarding the potentially improper removal of Power Foam so as to support a claim of active negligence, and the inferences arising therefrom, when viewed in favor of the non-moving party, fail to pierce the allegations of the complaint so as to support a motion for summary judgment.

The special concurrence urges that the above-referenced statements by Helton would not support a claim of *active* negligence because, "the negligence, if any, predated Mrs. Glass' arrival at Wendy's and her injuries plainly arose from a condition of the premises." Quite to the contrary. Appellants' alleged actions in the mainte-

nance of its floor would be active misconduct which, from either acts or omissions, works positive injury to others; such is active negligence in the classic sense. See Smith & Prosser, Cases & Materials on Torts, p. 320 (1). In the instant case, appellants' allegedly improper treatment of its floor with Power Foam was neither passive inaction nor, as the special concurrence styles it, an *"aware[ness]* that a dangerous condition existed, but refus[al] to remedy the situation." In fact, the dangerous condition did not just "exist," and Wendy's was not just "aware" thereof; appellants' conduct allegedly *created* the dangerous condition through the improper maintenance of its floor. The fact that appellants' floor is treated at night and not in its customers' presence (*"predated* Mrs. Glass' arrival") does not in any way diminish the fact that appellants' alleged negligence would be active (misfeasance) when proven.[13]

Further, the "condition of the premises" to which the special concurrence refers that may negate the presence of misfeasance is a condition that is *inherent* in the premises. This passive, static, inherent state is the "condition of the premises" referenced in *Lipham v. Federated Dept. Stores*, 263 Ga. 865, n. 1 (440 SE2d 193) (1994) and *Trammell v. Baird*, 262 Ga. 124, 126 (413 SE2d 445) (1992), which inherent condition does not encompass the results of a tortfeasor's negligent actions in utilizing a commercial degreaser in such a manner as to make its floor slippery. See, e.g., *Clinton v. Gunn-Willis Lumber Co.*, supra.

In sum, "the pleadings were not pierced by the showings in support of the motions[, and] the showings did not show as a matter of law that the defendants were not guilty of negligence constituting the proximate cause of the injuries as charged in the petition." *Chapman*, supra at 666. Thus, appellants' motion for summary judgment was properly denied.[14]

3. The trial court correctly denied appellants' motion for summary judgment as to the issue of punitive damages. Sufficient evidence was presented to support such award, should a jury choose to believe appellee's evidence that appellants knew that the "chemical"

---

[13] Obviously, the "condition of the premises" to which the special concurrence refers, which condition may negate the existence of active negligence, does not encompass the results of a tortfeasor's negligent actions in utilizing a commercial degreaser in such a manner as to make its floor slippery. See, e.g., *Clinton v. Gunn-Willis Lumber Co.*, 77 Ga. App. 643 (49 SE2d 143) (1948).

[14] We have reviewed the record in relation to appellants' additional enumerations of error concerning liability and find that appellants' contentions concerning (1) appellee's failure to exercise reasonable care, (2) the presence of "wet floor" cones as creating "equal knowledge," and (3) appellants' lack of duty toward appellee are either unsupported by the facts, unsupported by the law, or are disputed by competent evidence of record. As such, these contentions fail to demonstrate error in the denial of appellants' motion for summary judgment.

it put on its floor caused the floor to become slippery, but they "did not want to change what they were doing." OCGA § 51-12-5.1 (b).

*Judgment affirmed. Birdsong, P. J., and Ruffin, J., concur specially.*

BIRDSONG, Presiding Judge, concurring specially.

Although I agree the trial court properly denied BBB Service Company's motion for summary judgment, I write separately to make clear my objections to the analysis used by the majority in affirming that result. Additionally, I deem it important to note that certain inaccuracies in the majority's narrative of the facts played no part in my disposition of this case.

1. If the majority's statement that a movant for summary judgment has "the burden of establishing the nonexistence of any genuine issue of material fact," is intended to mean that movants for summary judgment must prove affirmatively the nonexistence of any genuine issues of material fact, this statement is contrary to our present summary judgment law as established in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474). If this statement is intended to convey the same meaning as the burden stated in *Lau's Corp.*, then why state it differently? OCGA § 9-11-56 (c) states that summary judgment shall be granted if the matters in the record "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Code section says nothing about the movant's burden to demonstrate anything. The obligations of the parties currently applicable in motions for summary judgment were announced in *Lau's Corp. v. Haskins*, supra, in which our Supreme Court unequivocally held that a "defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case." Id. at 491. Although apparently little noticed by both the bench and bar (as unfortunately evidenced by numerous briefs filed and decisions reached by this Court and trial courts relying on pre-*Lau's Corp.* precedent after the *Lau's Corp.* opinion was published), this holding was a watershed in the law of summary judgment in this state.

Before *Lau's Corp.*, " 'the burden of establishing the nonexistence of any genuine issue of material fact [was] upon the movant[ ]' " (*Alterman Foods v. Ligon*, 246 Ga. 620, 625 (272 SE2d 327)) was construed to mean that the movant had the burden of disproving the existence of any genuine issues of material fact. After *Lau's Corp.*, however, the "party who will not bear the burden of proof at trial

need not conclusively prove the opposite of each element of the non-moving party's case. Rather, that party must demonstrate by reference to evidence in the record that there is an absence of evidence to support at least one essential element of the non-moving party's case. In other words, summary judgment is appropriate when the court, viewing all the facts and *reasonable* inferences from those facts in a light most favorable to the non-moving party, concludes that the evidence does not create a triable issue as to each essential element of the case. In so holding, we overrule anything to the contrary." (Emphasis supplied.) Id. at 495 (4). Consequently, all cases, including *Alterman Foods*, decided prior to the Supreme Court's decision in *Lau's Corp.*, which placed the burden on the movant to disprove or negate with proof to the contrary elements of the non-movant's case on which the non-movant would have the burden of proof at trial, were overruled to the extent they conflicted with *Lau's Corp.* "Thus, after *Lau's Corp.*, movants for summary judgment are no longer required to disprove the essential elements of the plaintiff's case." *Coffey v. Wal-Mart Stores*, 224 Ga. App. 824, 827 (482 SE2d 720). Therefore, contrary to the majority's assertion, Wendy's had no burden to establish the nonexistence of any material factual issues by disproving the essential elements of Glass' case. To the extent that *Alterman Foods* and *Hall v. Cracker Barrel Old Country Store*, 223 Ga. App. 88 (476 SE2d 789), conflict with *Lau's Corp.* on this point, they are not valid precedent.

The elements required to establish liability on Wendy's in a slip and fall case in which the proprietor intentionally placed a substance on the floor are set out in *Alterman Foods v. Ligon*, supra at 623-624. Notwithstanding Wendy's evidence concerning the nature of the tile floor and the properties of its cleaner, Glass' evidence was sufficient to show that a genuine issue exists over whether the floor was slippery either because of the product used by Wendy's or because Wendy's employees did not use the product properly. Additionally, nothing in the record shows that Glass failed to exercise ordinary care for her own safety.

Moreover, as the manager's purported statement, if believed, is sufficient to show that Wendy's was aware a dangerous condition existed, but refused to remedy the situation, a genuine issue also exists over whether punitive damages are authorized. Therefore, I agree that the trial court did not err by denying Wendy's motion for summary judgment.

2. The majority's factual narrative suggests that the affidavit of Jack Helton stated that "obviously such product creates an emulsion of grease and dirt when it is applied to the floor"; "clearly, subsequent dry mopping would simply spread the grease emulsion, if it is not first removed properly"; and "however, the non-slippery character of

the degreaser itself would be irrelevant if the resultant greasy emulsion is not properly removed, which event could support a claim of active negligence." Although these statements appear to be reasonable conclusions or inferences which might be drawn, they are not contained in Helton's affidavit.

3. Additionally, the assertion that such statements would support a claim of active negligence is contrary to our law because the negligence, if any, predated Glass' arrival at Wendy's and her injuries plainly arose from a condition of the premises. *Lipham v. Federated Dept. Stores*, 263 Ga. 865 (440 SE2d 193) (differentiating between cases concerning active negligence and conditions of the premises); *Trammell v. Baird*, 262 Ga. 124, 126 (413 SE2d 445) (stating the duty owed when negligence arises from static or passive conditions). If the majority's contention on this point is correct, the standards for the second kind of slip and fall cases discussed in *Alterman Foods* would be effectively eliminated. In any event, as demonstrated above, these factual assertions were unimportant to my consideration of the case.

4. Although the continued validity of the *Alterman Foods* standards has been questioned by some members of this Court, the majority of this court recognizes that *Alterman Foods* remains binding precedent. See *Adams v. Sears, Roebuck & Co.*, 227 Ga. App. 695 (490 SE2d 150); *Hartley v. Macon Bacon Tune*, 227 Ga. App. 679 (490 SE2d 403). In addition to their continued authority as binding precedent, however, the *Alterman Foods* standards have continued significance because they remain a legitimate system for balancing the interests competing in these cases.

It is generally accepted that "mere ownership of land and buildings does not render one liable for injuries sustained by persons who have entered thereon or therein; the owner is not an insurer of the safety of entrants on his premises." Adams & Adams, Ga. Law of Torts (1996 ed.), § 4-1, p. 97. Thus, because owners are not insurers, proving only that a person fell is insufficient to establish the proprietor's negligence. "What the law requires is not warranty of the safety of everybody from everything, but such diligence toward making the store safe as a good business man is in such matters accustomed to use." (Citation and punctuation omitted.) *Alterman Foods*, supra at 624. Therefore, "to say that the issue is one for the jury in every such case presents an intolerable burden on innocent or even the most diligent merchants." Id.

Nevertheless, our law requires that owners or occupiers exercise ordinary care in keeping their premises safe (OCGA § 51-3-1) and requires them to exercise diligence in making their premises as safe as ordinarily prudent businesses would. *Alterman Foods*, supra at 624. Further, *Alterman Foods* recognizes that premises may be

unsafe not only because of the acts or omissions of the proprietors but also because of the negligence of customers and others over whom the proprietor may have no control. Thus, under *Alterman Foods* proprietors may be held liable by failing to keep their premises safe not only because they placed substances there, but also because they did not correct dangerous conditions after the proprietors learned or should have learned of them.

Under these conflicting demands, it will always be difficult to create bright line rules for disposition of slip and fall cases, but even if one attempted to do so, it is difficult to comprehend what such rules could be established other than one side or the other always would prevail. See for example the replacement suggested by the dissent in *Adams v. Sears, Roebuck & Co.*, supra.

Nevertheless, even though using the *Alterman Foods* standards may not permit establishment of the clear, definite guidance some apparently desire, they do provide a reasonable means for consideration of these cases. Further, notwithstanding the criticism, the *Alterman Foods* standards cannot be eliminated easily without effecting major changes in the underlying legal relationships. Even if one believed that the law should be changed to make owners or occupiers insurers of safety, we must recognize that bringing about such a significant change in our law would have associated and perhaps unintended consequences. What we should not do is achieve that change, as I believe the majority opinion would do, without acknowledging that a fundamental change in our law would result.

As they currently exist, I believe the *Alterman Foods* standards presently provide sufficient guidance for advising clients on the merits of their cases and/or on what actions should be undertaken in given situations to avoid potential liability. For example, neither customers who slip and fall, but who do not exercise ordinary care for their own safety by adequately watching where they are going and avoiding clearly visible foreign substance on the floor, nor proprietors who fail to institute reasonable precautions to detect and clean up foreign substances or other dangerous conditions should expect to be successful under the current *Alterman Foods* standards. In my view, the difficulty in applying these standards that some commentators have noted recently is not with the standards, but with the difficulty this Court has had in incorporating the *Alterman Foods* standards with the changes in summary judgment procedures brought about by our Supreme Court in *Lau's Corp. v. Haskins*.

I am authorized to state that Judge Ruffin joins in this special concurrence.

DECIDED SEPTEMBER 9, 1997 — 

*Bentley, Karesh & Seacrest, Gary L. Seacrest, Gerald P. Ruleman*, for appellants.

*Hart & McIntyre, George W. Hart, Thomas W. Thrash, Jr.*, for appellee.